**Charles R. GETZ, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 701987.

Supreme Court of Delaware.

Submitted: Oct. 20, 1987.
Decided: Feb. 29, 1988.

James T. Vaughn, Jr., of Vaughn and Nicholas, Dover, for appellant.

Ferris W. Wharton, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from a conviction in the Superior Court of rape first degree and a subsequent sentence of life imprisonment. The defendant, Charles R. Getz, was charged with the rape of his eleven year old daughter. He advances several claims of error one of which, the admission of evidence of alleged prior sexual contact with the victim, we deem the basis for reversal. We conclude, as a matter of law, that the admission of such evidence was an abuse of discretion.

I

The evidence presented by the State consisted of the daughter's testimony supported by corroborative evidence. At the time of the incident which gave rise to the charge, the victim and her older brother resided with her father and the latter's second wife, the victim's stepmother, Ariadna. The wife claimed that she awoke after midnight to find that the defendant was missing from their bed. She left her room to look for the defendant and confronted him leaving his daughter's bedroom wearing a housecoat. When asked what he was doing the defendant replied that he was "checking" on his daughter. The wife then entered the child's bedroom where the child appeared to be asleep and did not respond to questioning. The following day the wife confronted her husband to ask what he was doing in the bedroom. He refused to discuss the incident. The wife promptly questioned her stepdaughter who denied any sexual contact by her father.

Approximately ten days after this incident, the defendant engaged in a physical altercation with his wife which resulted in a call to the State Police. The responding officer questioned the wife in the presence of her stepdaughter. In the course of this interview, the wife advised the officer that "C– has something else to say." The daughter then related the bedroom incident to the officer who arranged for a further interview with a youth officer. After further investigation and a medical examination of the daughter, the defendant was

indicted on a single charge of rape first degree.

At trial, the State presented the testimony of the daughter to the effect that on the night in question her father had entered her room, undressed her and achieved partial penetration. The State also presented testimony from the mother, the investigating officers and a physician, Dr. Kuhn, who examined the child shortly after the incident was reported. According to Dr. Kuhn there was evidence that the child's hymen was partially intact, a finding consistent with intercourse but not with multiple episodes of penetration. The physician was not able to rule out other, non-sexual, causes for a partial tear of the hymen.

Prior to trial, counsel for the defendant became aware, through discovery, that a notation in the medical records reflected a statement by the child that there had been "multiple episodes where the father had molested her over the last year." Counsel promptly filed a motion *in limine* to bar the State from introducing into evidence any evidence of sexual contact with the victim, apart from the charged incident. The defendant claimed that such evidence did not fall within the permitted exceptions to the prohibition of character evidence under Rule 404(b) of the Delaware Rules of Evidence (D.R.E.).[1] In argument before the Superior Court, the State contended that it should be permitted to present evidence of the defendant's prior sexual contact with his daughter on two prior occasions. The State advanced three bases for their admission: motive, intent and plan, all "as proof of sexual interest in his daughter." The Superior Court denied the motion *in limine* without reason.

At trial, the State presented evidence of the defendant's prior sexual contact with his daughter in its case in chief through two witnesses.[2] Dr. Kuhn, who testified concerning his medical examination of the daughter, was requested to read from the hospital chart the child's case history including her statement of prior episodes of sexual molestation by her father. In addition, in direct examination of the daughter, the prosecutor prefaced his questioning about the charged incident with the statement: "Let's talk about the last time that that happened? Do you remember that?" Later the prosecutor asked: "Okay. And do you remember this, this last time, whether he put his penis all the way in your vagina or not."

At trial, the defendant denied any sexual contact with his daughter. He claimed that his wife, from whom he was then divorced, was attempting to create a misconduct ground for divorce in order to protect her status as an immigrant.

## II

The defendant's motion *in limine* and the Superior Court's refusal to exclude evidence of other sexual contact between the defendant and his daughter squarely presents for review the extent to which such evidence meets the standard of D.R.E. 404(b). The use by the State of prior bad acts or crimes is an oft-recurring question which deserves extended discussion.

We begin the analysis with a view of the standards which governed the use of bad character evidence prior to the adoption of the Delaware Uniform Rules of Evidence. The principles announced on an *ad hoc* basis were not significantly different from

---

1. D.R.E. 404(b) provides:
   **(b) Other Crimes, Wrongs Or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

2. In a proffer during argument on the motion *in limine*, the State advised the Trial Judge that it

intended to prove the two incidents of prior sexual contact through the testimony of the defendant's fourteen year old brother who on one occasion saw the defendant leaving the daughter's bedroom late at night. The next morning the daughter allegedly told her brother that sexual contact had occurred. The other incident allegedly involved fondling while the father and daughter occupied a couch in the living room. The State did not present this testimony at trial nor did it call the brother as a witness.

those now embraced in the rule. It was well established that evidence of other crimes was not, in general, admissible to prove that the defendant committed the offense charged. *Bantum v. State*, Del. Supr., 85 A.2d 741, 745 (1952). Recognized exceptions to the rule included evidence of intent, identity or common scheme or where the two crimes constitute one transaction and proof of one required proof of the other. *Id.* The underlying rationale for the principle that evidence of bad character is not itself evidence of guilt is simply a corollary of the presumption of innocence. A defendant must be tried for what he did, not who he is. As stated by Wigmore:

> The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge. Moreover, the use of alleged particular acts ranging over the entire period of the defendant's life makes it impossible for him to be prepared to refute the charge, since any or all of such acts may be mere fabrications.

1A Wigmore, *Evidence*, § 58.2, at 1212–13 (Tillers rev. 1983).

The adoption of D.R.E. Rule 404(b), modeled after Federal Rule of Evidence 404(b), formalized the general rule forbidding introduction of character evidence solely to prove that the defendant acted in conformity therewith on the occasion in question. *Dutton v. State*, Del. Supr., 452 A.2d 127, 145 (1982). D.R.E. 404(b) is comprised of two sentences: the first proscribing admittance of evidence to prove propensity and the second enumerating illustrative purposes for which evidence of other acts, crimes, or wrongs may be used.[3] Thus, D.R.E. 404(b) forbids the proponent, usually the prosecutor, from offering evidence of the defendant's uncharged misconduct to support a general inference of bad character. For purposes of D.R.E. 404(b), character evidence refers to the disposition or propensity of a defendant to commit certain crimes, wrongs or acts. E. Imwinkelried, *Uncharged Misconduct Evidence*, § 2:18, at 48 (1984).

The second sentence of D.R.E. 404(b), however, permits introduction of such evidence for reasons other than proving propensity, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." D.R.E. 404(b). Hence, evidence of prior misconduct is admissible when it has "independent logical relevance" and when its probative value is not substantially outweighed by the danger of unfair prejudice. *See* D.R.E. 403; *Diaz v. State*, Del.Supr., 508 A.2d 861, 865 (1986).

The ambiguous formulation of D.R.E. 404(b)—the statement of the prohibition followed by a catalogue of exceptions—has raised the question of whether the propensity rule should be one of exclusion or one of inclusion. Under the exclusionary approach, evidence of prior bad acts would not be admissible unless it fits within a finite list of recognized exceptions provided in D.R.E. 404(b), i.e., intent, motive, opportunity, identity, plan, knowledge, preparation or absence of mistake of accident. Conversely, under the inclusionary approach, the proponent is allowed to offer evidence of uncharged misconduct for any material purpose other than to show a mere propensity or disposition on the part of the defendant to commit the charged crime. The stated exceptions are thus deemed illustrative, not exclusive. *See, e.g., United States v. Woods*, 4th Cir., 484 F.2d 127 (1973), *cert. denied* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974).

Although there is support for the exclusionary approach, the current trend among courts and commentators appears to favor

---

**3.** Although the other crimes or bad acts usually occur prior to the charged offense, as here, evidence of subsequent bad acts may be admissible under D.R.E. 404(b) for a material purpose, such as demonstrating a consciousness of guilt. *Lovett v. State*, Del.Supr., 516 A.2d 455, 468 (1986); *Goldsmith v. State*, Del.Supr., 405 A.2d 109, 114 (1979). In the context of this case we limit our analysis to the use of evidence of prior bad acts.

the inclusionary approach. *See, e.g., United States v. Moore*, D.C. Cir., 732 F.2d 983 (1984); Reed, *Admission of Other Criminal Act Evidence After Adoption of the Federal Rules of Evidence*, 53 U.Cin.L. Rev. 113 (1984); E. Imwinkelried, *supra*, § 2:29–2:30, at 66–72 (noting that adoption of Federal Rules of Evidence and its accompanying legislative history leave no doubt that Congress intended 404(b) to be one of inclusion). *But see Nero v. Blackburn*, 5th Cir., 597 F.2d 991 (1979) (ruling that under Louisiana law the prosecutor may not introduce evidence of other crimes unless it comes "within a specific statutory provision authorizing its admission"). The courts adopting the inclusionary approach reason that the use of the expression "such as" in introducing the latter part of the rule makes it clear that the listed theories of relevance are examples rather than exceptions to some general exclusionary norm. *See* 22 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence*, § 5240 (1984). In our view, the use of the introductory phrase "such as" can be only reconciled with an inclusionary construction. Thus, if the offered evidence meets the standards herein delineated it is admissible whether or not it may be "pigeonholed" under the rule.

■ Even under an inclusionary approach, evidence of prior criminal acts must meet the threshold test of relevancy, i.e., the uncharged misconduct must be logically related to the material facts of consequence in the case. *See United States v. Hodges*, 9th Cir., 770 F.2d 1475, 1479 (1985). Logically relevant evidence is defined in D.R.E. 401 as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

D.R.E. 401 embraces the notion that relevancy consists of both materiality and probative value. *See* C. McCormick, *Evidence*, § 185, at 541 (Cleary 3d ed. 1984). Materiality looks to the relation between the propositions for which the evidence is offered and the issues, or ultimate facts, in the case. *Id.* Probative value is concerned with the tendency of the evidence to establish the proposition that it is offered to prove. Hence, a fact that is "of consequence" is material and evidence that advances the probability that it is as a party claims it to be has probative value. *Id.* at 542.

■ The relationship of the offered evidence to the ultimate fact or issue is the key to admissibility of other misconduct evidence. The defendant's propensity to commit crimes, or his general bad character, is inconsistent with the presumption of innocence and is never in issue, unless he tenders evidence of his character under D.R.E. 404(a)(1).[4] However, if an ultimate fact such as identity, intent, or plan has been placed in issue by the defendant the State may offer misconduct evidence which tends to disprove this contention. While certainly the better practice is for the State to present such evidence on cross-examination or in rebuttal, the prosecutor is not clairvoyant and has no assurance that the defendant will necessarily supply the predicate issue. For this reason the State is not foreclosed from presenting other misconduct evidence as part of its case-in-chief but must be prepared to make the necessary proffer of specific relevancy.

■ Preliminarily, the State seeks to justify the use of evidence of prior sexual contact by the defendant with his daughter on the ground that such evidence would have been admissible in cross-examination of the defendant pursuant to D.R.E. 404(a)(1) and 405(a)[5] to impeach his claim

4. D.R.E. 404 provides in part:
**RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES.**
(a) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) **Character of Accused.** Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

5. D.R.E. 405 provides in part:

that he was concerned with his child's welfare. The difficulty with this argument is two-fold. First, the State presented the other sexual misconduct evidence in its case-in-chief and must justify its use at that time and not on the basis of whether the defendant might later offer evidence of his own character. Second, under D.R.E. 405(a) evidence of specific sexual misconduct would have been admissible in this case, if at all, only to cross-examine the defendant's character witnesses on the issue of his reputation and then only to the extent the defendant's acts of specific misconduct were known in the community or among the circle of his acquaintances. The admissibility of prior criminal evidence is carefully circumscribed and admissibility for a limited purpose in cross-examination is not to be equated with use as affirmative evidence in the State's case-in-chief. *McCloskey v. State*, Del.Supr., 457 A.2d 332, 336 (1983).

The State next contends that the trial court admitted the other crimes evidence, in the exercise of discretion, as evidence of the "propensity for illicit sexual relations with the particular person" who is the alleged victim.

A survey of other jurisdictions reveals that evidence of uncharged sexual misconduct has been admitted under two general, but sometimes overlapping, categories. The first consists of evidence which is admitted pursuant to one of the enumerated purposes found in D.R.E. 404(b). The most common of these purposes is the defendant's common plan or scheme to engage in sexual misconduct with the same victim or others of similar age or circumstance. *See, e.g., State v. T.W.*, Mont.Supr., 715 P.2d 428 (1986); *Pendleton v. Commonwealth*, Ky.Supr., 685 S.W.2d 549 (1985); *People v. Moon*, Cal.App., 165 Cal.App.3d 1074, 212 Cal.Rptr. 101 (1985) (citing *People v. Kelley*, Cal.Supr., 66 Cal.2d 232, 57 Cal.Rptr. 363, 424 P.2d 947 (1967)); *People v. Whitesel*, Colo.Supr., 200 Colo. 362, 615 P.2d 678 (1980); *Lewis v. State*, Ind.Supr., 451 N.E.

2d 50 (1983); *State v. Matteson*, Minn. Supr., 287 N.W.2d 408 (1979); *Hendrickson v. State*, Wisc.Supr., 61 Wis.2d 275, 212 N.W.2d 481 (1973). Other purposes for which evidence of uncharged sexual misconduct is offered include the defendant's intent, *see, e.g., State v. DeLong*, Me.Supr., 505 A.2d 803 (1986); *McMichael v. State*, Nev.Supr., 94 Nev. 184, 577 P.2d 398 (1978), or motive to commit the charged crime. *See, e.g., State v. Friedrich*, Wisc. Supr., 135 Wis.2d 1, 398 N.W.2d 763 (1987); *State v. Graham*, Mo.Supr., 641 S.W.2d 102 (1982); *Elliott v. State*, Wyo.Supr., 600 P.2d 1044 (1979).

The second category, upon which the State relies, consists of evidence which is admitted under a lustful disposition or sexual propensity exception to D.R.E. 404(b)'s general prohibition barring use of evidence for such purposes. This exception is almost universally recognized in cases involving proof of prior incestuous relations between the defendant and the complaining victim. *See, e.g., Johnson v. State*, Ark. Supr., 288 Ark. 101, 702 S.W.2d 2 (1986); *Brackens v. State*, Ind.Supr., 480 N.E.2d 536 (1985); *Commonwealth v. Thomas*, Mass.App., 19 Mass.App. 1, 471 N.E.2d 376 (1984); *State v. Young*, Mo.App., 661 S.W. 2d 637 (1983); *State v. Graham*, Mo.Supr., 641 S.W.2d 102 (1982); *State v. Hubbs*, Iowa Supr., 268 N.W.2d 188 (1978).

The rationale for the sexual propensity or lustful disposition exception has been stated by the Arizona Supreme Court in *State v. McDaniel*, Az.Supr., 80 Ariz. 381, 298 P.2d 798, 802–803 (1956) as follows:

Certain crimes today are recognized as stemming from a specific emotional propensity for sexual aberration. The fact that in the near past one has given way to unnatural proclivities has a direct bearing upon the ultimate issue whether in the case being tried he is guilty of a particular unnatural act of passion.... This propensity tended directly to establish the offense for which the defendant

**RULE 405. METHODS OF PROVING CHARACTER.**

   **(a) Reputation.** In all cases in which evidence of character or a trait of character of a

person is admissible, proof may be made by testimony as to reputation. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

herein was being tried, much as symptoms of a known disease suffered in the past tend to establish the presence of the same today. Of course, this exception would be subject to the limitation of relevant nearness in time, and would not apply to mere criminal tendencies in general as distinguished from specific sexual inclinations.

Conversely, courts which have rejected this blanket exception have noted that in the absence of a materiality nexus such propensity evidence is difficult to reconcile with the restrictive language of D.R.E. 404(b). *See Pendleton v. Commonwealth,* Ky.Supr., 685 S.W.2d 549 (1985); *State v. Burchfield,* Tenn.Supr., 664 S.W.2d 284 (1984); *Commonwealth v. Shively,* Pa. Supr., 492 Pa. 411, 424 A.2d 1257 (1981) (overruling prior case law); *People v. Major,* Mich.Supr., 407 Mich. 394, 285 N.W.2d 660 (1979); *State v. Curry,* Ohio Supr., 43 Ohio St.2d 66, 330 N.E.2d 720 (1975).

■ The primary criticism of the "sexual gratification" exception is that it fails the materiality test under the facts of this case, and in most fact situations where accident or mistake is not at issue. To the extent that sexual gratification may be equated, for example, with motivation such evidence bears upon an issue which is not an element of the offense and concerning which the State has no burden. *People v. Major,* 285 N.W.2d at 663. While the State does have the burden of proving intent, as an element of the offense of rape first degree,[6] the requisite state of mind is demonstrated by proof of the defendant's "conscious object to engage in conduct of that nature." 11 *Del.C.* § 231(a)(1). Further, the jury may infer that intention from the circumstances surrounding the act charged. 11 *Del.C.* § 307(a). Thus where, as here, the State presents direct evidence, through the testimony of an alleged victim, that an attack occurred, no evidential purpose is served by proof that the defendant committed other intentional criminal acts of the same type. The identity of the defend-

ant was never in dispute nor was there any suggestion that his conduct resulted from mistake or accident. *Cf. Diaz v. State,* 508 A.2d at 865. The defendant denied any sexual contact with his daughter. While the defendant's plea of not guilty required the State to prove an intentional state of mind as an element of the offense, the plea itself did not present a predicate issue concerning intent sufficient to justify the State in attempting to negate lack of intent as part of its case-in-chief.

■ Nor is the other sexual misconduct evidence admissible, as the State contends, under the common plan or scheme exception. Evidence of similar criminal acts is generally admitted under the exception in two fact situations. The first involves the use of prior acts which are so unusual and distinctive that their relationship to the charged offense may establish identity. *Dutton v. State,* 452 A.2d at 145; *Commonwealth v. Shively,* 424 A.2d at 1259; C. McCormick, *Evidence,* § 190, at 559. The second basis for admissibility of other bad acts under the plan or scheme exception is where the other acts form part of the background of the alleged act, to which it is inextricably related and without which a full understanding of the charged offense is not gained. *State v. Curry,* 330 N.E.2d at 725. The evidence of prior sexual contact in this case, even if it had adhered to the State's proffer, involved two other isolated events within the previous two years depicting no common plan other than multiple instances of sexual gratification. Repetition is not, in itself, evidence of a plan and other "crimes of the sort with which he is charged" cannot be admitted against the defendant under that guise. *United States v. Dothard,* 11th Cir., 666 F.2d 498, 502 (1982).

■ Finally, the State's argument in favor of a sexual gratification exception must be rejected because it seeks to impart a blanket exception to a classification of criminal offenses without regard to the materiality requirement. The sexual gratifi-

---

6. The defendant was indicted under 11 *Del.C.* § 764, (since repealed) which provided in pertinent part:

A male is guilty of rape in the first degree when he intentionally engages in sexual intercourse with a female without her consent, . . .

cation exception proceeds upon the assumption that a defendant's propensity for satisfying sexual needs is so unique that it is relevant to his guilt. The exception thus equates character disposition with evidence of guilt contrary to the clear prohibition of D.R.E. Rule 404(b). We are no more inclined to endorse that equation than we are to consider previous crimes of theft as demonstrating a larcenous disposition and thus admissible to show proof of intent to commit theft on a given occasion.

We recognize that crimes of sexual abuse, particularly those involving children, are sometimes difficult to prosecute because of the ages of the victims and the fact that such offenses usually take place in secret and under conditions of adult-imposed duress. Evidential problems inherent in such cases are best addressed on a case by case basis, through accommodating the needs of youthful witnesses and by explanation of the dynamics which affect their testimony, *see Wheat v. State*, Del. Supr., 527 A.2d 269 (1987) and *Powell v. State*, Del.Supr., 527 A.2d 276 (1987), rather than through the creation of a class of criminal offenses to which the usual rules of evidence do not apply.

The unfairness inherent in the indiscriminate use of evidence of prior criminal acts is aptly illustrated by this case. Although the State had evidence of three separate acts of sexual contact, it charged the defendant with only one. Of the two prior acts one apparently could also have formed the basis for a separate charge of rape or attempted rape. In arguing for the admissibility of these prior acts the State was unable to provide specific dates for either incident.[7] At trial, the State presented no direct specific evidence of the prior criminal acts but was able to place before the jury the inference that the defendant was guilty of other acts of sexual misconduct involving his daughter. Although the defendant denied the indicted offense he was never directly confronted with the evidence of the other crimes. Moreover, the jury received the evidence without any guidance concerning the limited purpose for its admissibility and thus was permitted to consider its cumulative effect in assessing the defendant's guilt.

■ Although we conclude that the admission of the other crimes evidence in this case constituted an abuse of discretion without regard to the balancing test required under D.R.E. 403, we take the occasion to set forth the following guidelines which should govern the admissibility of such evidence in future cases:

(1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.

(2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.

(3) The other crimes must be proved by evidence which is "plain, clear and conclusive." *Renzi v. State*, Del.Supr., 320 A.2d 711, 712 (1974).

(4) The other crimes must not be too remote in time from the charged offense.

(5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.

(6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.[8]

---

7. The transcript of the *in limine* argument reflects the following colloquy:

THE COURT: What was the time frame of these other two incidents?

MR. WHARTON: The second incident that I mentioned, obviously these people didn't keep logs and all that, but it would have been prior to this incident while they were living in that house. The house is in Cheswold.

The first incident that I mentioned would have been before that when they were living in a trailer. It would have been probably two years ago, something like that.

8. A limiting instruction substantially in the following form is appropriate. This suggested format addresses the use of other crimes based on identity.

## III

Our reversal of defendant's conviction on the other crimes issue renders a ruling on his other claims of trial error unnecessary and in any event certain of those claims relating to the conduct of the trial are now moot. However, for the guidance of the Superior Court should certain of these claims be presented upon a retrial, we make the following rulings without elaboration: (1) The Trial Court correctly denied the defendant's pretrial motion for a psychological examination of the complaining witness. Defendant's affidavit was clearly insufficient to provide a basis for a court-ordered examination. (2) The State's use of other acts of physical abuse by the defendant of his wife, on occasions other than that which led to the reporting of the alleged rape, were not material to any issue in the State's case nor were they used properly on cross-examination to rebut the defendant's claim that he did not endanger the child's welfare. The State's claim that mistreatment of the wife in the presence of the child provides a basis for impeachment is too tenuous to offset the prejudicial nature of this evidence. D.R.E. 403. (3) The Superior Court did not err in excluding evidence of a prior instance of alleged untruthfulness (feigning blindness) offered by the defendant, through the testimony of the child's mother, to attack the daughter's credibility. Such extrinsic evidence was properly excluded under D.R.E. 608(b). Even if such evidence were deemd "probative of truthfulness or untruthfulness," it may be presented only through cross-examination. *Cf. Weber v. State,* Del.Supr., 457 A.2d 674 (1983).

The conviction is REVERSED and the case is REMANDED for a new trial.

Ladies and gentlemen of the jury, during this trial you have heard evidence that the defendant was involved in an act similar to the [indicted offense] that he is now charged with. You may not use that evidence as proof that the defendant is a bad person and therefore probably committed the [indicted offense] he is charged with. You may use the evidence only to help you in deciding whether the defendant was the person who committed the [indicted offense] charged in the indictment now on trial. The state claims that both acts were committed in the same, peculiar, distinctive fashion. If the defendant committed the other act and you find that both acts were committed in the same, distinctive fashion, that might tend to identify the defendant as the person who committed the [indicted offense] charged in the indictment now on trial.

Source: E. Imwinkelried, *supra,* § 9:65, at 113.