# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID WATSON, | § | |
| | § | No. 665, 2013 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for Sussex County |
| | § | |
| STATE OF DELAWARE, | § | No. 1301001320A |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: February 11, 2015
Decided: March 19, 2015

Before **STRINE**, Chief Justice, **HOLLAND**, and **VAUGHN**, Justices.

## ORDER

On this 19ᵗʰ day of March 2015, it appears to the Court that:

(1) Defendant-below/Appellant David Watson appeals from Superior Court jury verdicts finding him guilty of three counts of First Degree Reckless Endangering, three counts of Possession of a Firearm During the Commission of a Felony, one count of Second Degree Conspiracy, and one count of Criminal Mischief. Watson raises two claims on appeal. First, he contends that the Superior Court abused its discretion by admitting evidence of uncharged "other crimes, wrongs or acts." He contends that such evidence was inadmissible under Delaware Rules of Evidence

404(b)[1] and 403.[2] Second, Watson contends that the trial court erred by admitting evidence of his tattoos and a poster board that he had painted, both of which depicted the number "187." As discussed below, the tattoos and poster board were offered by the State to prove that he intentionally fired a weapon at a police officer's home. We find no merit to Watson's claims. Accordingly, we affirm.

(2) At approximately 3:30 a.m. on December 27, 2012, Officer Clifford Dempsey of the Dewey Beach Police department was awakened in his home in Laurel, Delaware by two loud crashes. Officer Dempsey immediately checked on his nine and four-year old sons, who were sleeping in bunk beds in a separate room. Officer Dempsey then checked his daughter's bedroom, where he discovered a bullet hole in the bedroom window and damaged drywall. In a room adjacent to his daughter's bedroom, Officer Dempsey found additional damage and what he thought to be a .30 caliber bullet on the floor.[3] A Delaware State Police Evidence Detection

---

[1] D.R.E. 404(b) states:

> (b) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

[2] D.R.E. 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

[3] None of Officer Dempsey's children were injured in the shooting.

2

Unit officer later examined the scene and discovered that someone had fired three rounds at Officer Dempsey's home. It was also determined that the bullet Officer Dempsey found was a 7.62x54r, steel-jacketed, Russian-manufactured round.

(3) On the same morning, about half an hour before the shooting at Officer Dempsey's home, someone fired shots at Deputy Sheriff Jennifer Hall's home in Maryland. Hall is a member of the Worchester County, Maryland Sheriff's Office and a resident of Wicomico County, Maryland. Police recovered a 7.62x54r, steel-jacketed, Russian-manufactured bullet from Deputy Sheriff Hall's kitchen.

(4) On December 10, 2012, a little more than two weeks prior to the shootings at Officer Dempsey's and Deputy Sheriff Hall's homes, someone had fired three shots at Deputy Chuck Bratten's home in Parsonsburg, Maryland, about four miles from the Delaware State line. Deputy Bratten works for the Wicomico County Sheriff's Office. At the scene of the shooting at Bratten's house, officers recovered several shotgun pellets. All three of the officers whose homes were fired upon had been issued marked police vehicles, which were parked outside of the officers' homes at the times of the shootings.

(5) On January 2, 2013, a Wicomico County Sheriff's deputy noticed a speeding vehicle near the Delaware line and followed the vehicle as it crossed into Delaware. Delaware police were notified and eventually pulled the vehicle over for

3

speeding. Orrin Joudrey was the vehicle's driver. Police immediately noticed that Joudrey was intoxicated, and arrested him for driving under the influence. An inventory search of Joudrey's vehicle revealed camoflauge paint, two shotgun shells, and a Russian-manufactured, steel-jacketed 7.62x54r round.

(6) Joudrey informed police that he was on his way to Watson's house. After being confronted with the 7.62x54r round found in his vehicle and a video on his phone of Watson shooting a shotgun, Joudrey confessed that it was he and Watson who had fired shots at the homes of all three law enforcement officers. Police then executed search warrants on the homes of both Watson and Joudrey. From Watson's home, officers recovered a pistol grip shotgun, shotgun shells, a number of 7.62x54r rounds, and a Russian Mosin-Nagant 7.62 bolt action rifle with a 7.62x54r round still in the chamber. Officers also recovered a poster board with the number "187" spray-painted on it. At Joudrey's house, officers discovered a makeshift shooting range in the back yard that was littered with spent 7.62x54r shell casings and shotgun shells.

(7) The State's firearm expert determined that the 7.62x54r bullets recovered from Officer Dempsey's and Deputy Sheriff Hall's homes were fired from the Mosin-Nagant rifle found at Watson's house. The steel-jacketed 7.62x54r round recovered from Joudrey's vehicle was also consistent with the bullet found at Officer Dempsey's house. Watson and Joudrey were charged in Maryland and Delaware for

4

the three shootings. Prior to trial, Joudrey entered into a plea regarding the charges stemming from the Delaware shooting and agreed to testify at Watson's Delaware trial.

(8) At Watson's Delaware trial, the Superior Court allowed the State to present evidence of the two Maryland shootings on the grounds that the incidents were committed by the same person, in the same manner, and were thus admissible under D.R.E. 404(b) to show that Watson's conduct was intentional or reckless and not an accident or mistake. In admitting the evidence, the trial court stated: "I think that the need for this is great in the sense that the State is attempting to establish this was no accident; this was no mistake; this was a reckless course of conduct or an intentional course of conduct that, fortunately, did not lead to a tragedy . . . ."[4] The Superior Court also provided a limiting instruction which directed the jury to use the evidence of the Maryland shootings only to help determine Watson's state of mind in the instant case and not to infer that the defendant was "a bad person."[5]

(9) Additionally, the Superior Court permitted the State to introduce photographs of two tattoos on Watson's arms and the spray-painted poster board recovered from Watson's basement depicting the number "187." Joudrey testified at

---

[4] Appellant's Op. Br. App at A35.
[5] Appellee's Ans. Br. App. at B87-88.

trial that Watson believed the number "187" meant "officer down" or "murder on a cop."[6] Watson offered no witnesses of his own on rebuttal.

(10) After a four and a half day trial, the jury returned the aforementioned guilty verdicts. Watson was thereafter sentenced to, *inter alia*, a cumulative term of confinement of 101 years at Level 5 supervision. This appeal followed.

(11) "We review for abuse of discretion a trial judge's admission of evidence that is relevant for some purpose other than to prove the defendant's propensity to commit crimes pursuant to D.R.E. 404(b)."[7] We also review for abuse of discretion a trial court's other evidentiary rulings.[8]

(12) Under DRE 404(b), the State may not admit evidence "of other crimes, wrongs or acts . . . to prove the character of a person in order to show action in conformity therewith. [Such evidence] may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."[9] It is well-established Delaware law that in order to admit evidence of other crimes under D.R.E. 404(b), the following elements must be satisfied:

---

[6] Appellant's Op. Br. App. at A101-02.
[7] *Campbell v. State*, 974 A.2d 156, 160 (Del. 2009).
[8] *Richardson v. State*, 43 A.3d 906, 911 (Del. 2012).
[9] D.R.E. 404(b).

6

(1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.
(2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.
(3) The other crimes must be proved by evidence which is plain, clear and conclusive.
(4) The other crimes must not be too remote in time from the charged offense.
(5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.
(6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.[10]

(13) Watson contends that the evidence of the Maryland shootings was not independently and logically relevant to any material issue in the Delaware case and was unfairly prejudicial under D.R.E. 403. He further contends that because he did not argue at trial that he lacked the intent to shoot, or that he was reckless in shooting at Officer Dempsey's home, evidence of the Maryland shootings was unnecessary to prove his intent.

(14) Watson's first argument is without merit. Watson was charged with Attempted First Degree Murder, First Degree Reckless Endangering, and First Degree Conspiracy. At trial, the burden rested with the State to prove the requisite elements

---

[10] *Getz v. State*, 538 A.2d 726, 734 (Del. 1988) (internal citations and quotation marks omitted).

7

of each crime charged beyond a reasonable doubt. In order to prove Attempted First Degree Murder, the State had to show that Watson intended to kill another human being by shooting at Officer Dempsey's home. In order to prove Reckless Endangering the State had to show that Watson's conduct was, at a minimum, reckless. Finally, to prove that Watson was guilty of Conspiracy, the State had to show that Watson agreed to attempt to kill another human being by shooting at Officer Dempsey's home.

(15) Evidence of the Maryland shootings was directly relevant to prove Watson's state of mind for each of the aforementioned crimes. The fact that Watson chose not to actively challenge the state of mind element at trial is irrelevant. The burden of proving each element of the crime beyond a reasonable doubt remained on the State, and evidence of the Maryland shootings was properly admitted for the limited purpose of showing that Watson was intentionally targeting and attempting to kill law enforcement officers. Thus, the evidence was probative to the State's claim that Watson intended to kill someone when he fired into Officer Dempsey's house. It tended to show that the shooting into Officer Dempsey's home was not simply a ride-by, random shooting. Accordingly, we find that evidence of the Maryland shootings was independently relevant for the purpose of proving Watson's state of mind, a material issue in this case.

8

(16) We also find that the probative value of the evidence of the Maryland shootings was not substantially outweighed by its prejudicial effect. The trial court in this case carefully crafted and timely gave a specific limiting instruction to the jury, which directed the jury to use evidence of the Maryland shootings only to help determine Watson's identity and state of mind. Specifically, the trial court stated:

> During the course of this trial, you have heard evidence that the defendant was allegedly involved in acts similar to his present charges; that evidence that the State alleged events occurring in Maryland. You may not use that evidence for the purpose that the defendant has a certain character trait with respect to the crimes charged in the indictment. You may not use that evidence as proof the defendant is a bad person and, therefore, probably committed the indicted offenses. You may use that evidence only to help you in deciding whether the defendant was the person or one of the persons who committed the indicted offenses charged in the indictment now on trial and, if so, the defendant's state of mind.[11]

(17) The trial court's jury instruction sufficiently limited the jury's consideration of the evidence to the specific purpose for which it was admitted. The instruction was based on the trial court's broad discretion under D.R.E. 403, and effectively mitigated any alleged prejudice that Watson may have suffered from the evidence being admitted. Thus, we find that the trial court did not abuse its discretion by admitting evidence of the Maryland shootings.

---

[11] Appellee's Ans. Br. App. at B87-88.

(18) Watson's second claim is that the trial court erred by admitting into evidence the depictions of the number "187." Watson further contends that the trial court erred by permitting Joudrey to testify that Watson had told him that "187" meant murder of a cop. Watson contends that this evidence was unduly prejudicial as it allowed the jury to judge him on the basis of character.

(19) We find Watson's second argument wholly unpersuasive. Evidence of Watson's "187" tattoos and the poster board depicting the number "187" was directly relevant to prove Watson's state of mind. Joudrey testified at trial that Watson told him the number "187" came from the California Penal Code, and meant murder of a cop. Watson also told Joudrey that "187," "officer down" was a motto that he "lived by . . . [and] that it was him."[12] This evidence was highly probative in proving Watson's intent and motive in shooting at Officer Dempsey's home, and was not outweighed by any alleged prejudice. Thus, Watson's second argument must fail.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

_____
Justice

---

[12] Appellant's Op. Br. App. at A101.