IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAKAI CHAVIS, | § | |
| | § | No. 402, 2019 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 1806020079 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: March 25, 2020
Decided: May 26, 2020

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Bernard J. O'Donnell, Esquire, Assistant Public Defender, Wilmington, Delaware for Appellant, Dakai Chavis.

Kathryn J. Garrison, Esquire, Deputy Attorney General, Dover, Delaware for Appellee, State of Delaware.

**VAUGHN**, Justice:

The Appellant, Dakai Chavis, appeals from his conviction in Superior Court of Criminal Trespass in the First Degree. He raises one issue. He contends that the Superior Court erred during his jury trial by admitting evidence of two prior convictions under Delaware Rule of Evidence 404(b). For the reasons which follow, we agree that the evidence of his prior convictions should not have been admitted.

## I. FACTS

After attending the first day of Firefly Festival during the June 15, 2018 weekend, Karen Eng and her brother, Brian Eng, checked into the Baymont Inn in Newark, Delaware. In the early hours of the morning, while the Engs were asleep, someone entered their room. Ms. Eng awoke, heard rustling in the room, sat up in bed, and saw a man crawling at the foot of the bed near the door to the room. She asked, "what are you doing?"[1] The man replied that he was in the wrong room and left. After the Engs checked personal property they had placed on a desk, Mr. Eng found that roughly $50 was missing from his wallet.

Before they had a chance to report the incident to the front desk, the Engs received a call on the hotel room phone. The caller identified himself as the hotel manager and explained that a maintenance worker was just in their room. The caller agreed to meet with the maintenance worker and Ms. Eng at the front desk. She went down to the front desk, on her way finding the cash from her brother's wallet

---

[1] App. to Opening Br. at A106.

on the hallway floor outside their room. When she reached the front desk, she described the situation to a female clerk on duty, who was surprised to hear what Ms. Eng was telling her. The clerk called the maintenance worker on duty to the front desk, and he stated that he was not the man who entered the Engs' room. Ms. Eng agreed that he was not the intruder. The Newark police were contacted, and Detective William Anderson began an investigation.

Ms. Eng described the intruder as an African-American man, between 5'5" and 5'7" tall, not heavy, and dressed in dark clothing. She informed Detective Anderson, however, that she would not be able to identify the man in a lineup. Detective Anderson obtained and reviewed surveillance footage from the hotel lobby. He observed a man matching the description given by Ms. Eng enter the hotel lobby at about 6:30 a.m., walk through the doorway to a stairwell, come back into the lobby about 22 minutes later, and then exit through the doorway to the stairwell again. Detective Anderson recalled that Chavis, who matched the appearance of the man in the video and the description provided by Ms. Eng, had been involved in two incidents at a Days Inn in Newark in November 2014. In the first incident, Chavis was alleged to have opened a door to a hotel room and, when he realized the room was occupied, to have told the occupant he was a maintenance employee and then left. He pled guilty to criminal trespass for that incident. In the second incident, Chavis was alleged to have used a stolen credit card that had been taken from a room

at the same motel two weeks later. As a result of that incident, Chavis pled guilty to theft.

During his investigation, Detective Anderson also discovered that Chavis was wearing a GPS monitor at the time of the incident in the Engs' motel room. GPS records placed Chavis at the hotel near the Engs' room at the time Ms. Eng saw her intruder.

As a result of his investigation, Detective Anderson arrested Chavis for Burglary in the Second Degree and Misdemeanor Theft. Chavis was subsequently indicted on those charges.

Prior to Chavis' trial, the State filed a Motion *in limine* asking the court to admit into evidence the convictions for the 2014 incidents at the Days Inn under D.R.E. 404(b). In the motion, the State alleged that the two prior offenses were "strikingly similar" to the charged offenses in this case and that it "would use those convictions as proof of motive, plan, intent, and absence of mistake or accident."[2] The motion further stated, in pertinent part:

> In this case, the evidence is material in that it goes to the defendant's motive, plan, intent, or absence of mistake in coming onto the property of the Baymont Inn. Specifically, the prior cases become relevant to show a specific *modus operandi* the defendant utilizes when he burglarizes hotel rooms in the early morning hours. He gains entry to the rooms and when confronted makes up a

[2] *Id.* at A10.

story proclaiming to be a maintenance man and flees the scene.[3]

In addressing the "plain, clear and conclusive" factor of *Getz v. State*, the motion stated that:

> As to the third *Getz* factor, the evidence will be admitted by the testimony from the investigating officer. The police reports from both incidents, complaints 06-14-092532, and 06-14-095044, have been provided to defense as attachments to the instant motion. The defendant's convictions for these offenses are plain, clear, and conclusive due to his guilty pleas. To the extent there is a witness to further that narrative, witness testimony is sufficient to support a finding of plain, clear, and conclusive evidence.[4]

The defense filed a written response. Among the arguments set forth in the response was an argument that the State's evidence did not satisfy *Getz*'s requirement that proof of other crimes be by evidence which is "plain, clear and conclusive." Specifically, with regard to this factor, the defense argued that Chavis' pleas of guilty, in and of themselves, were not plain, clear and conclusive proof of all of the underlying, narrative facts of those offenses.

On the day of trial, the trial judge heard the motion and ruled that the evidence of the two prior crimes would be admitted:

> [I]t's pretty clear to me in my mind what happened and that it specifically took place at the hotel, and so I think that both of these overcome the *Getz* factor. I think you

---

[3] *Id.* at A12.
[4] *Id.* at A13.

can use this as part of a plan and I think this is relevant, I don't think there's undue prejudice here. So I'm going to allow that testimony.[5]

During the course of his direct examination at trial, Detective Anderson discussed Chavis' prior convictions. Testifying from the police reports of those incidents, he informed the jury that in the first incident Chavis pled guilty to "trespassing after opening a door to an occupied hotel room and telling the occupant that he was a maintenance employee."[6] With regard to the second incident, Detective Anderson testified that "[t]he defendant pled guilty to taking a credit card out of an occupied hotel room."[7] On cross-examination, Detective Anderson added that both incidents occurred at the same Days Inn in Newark, nine days apart; that he had no involvement in either of the prior incidents; and that his only knowledge of those incidents came from reading the police reports.

The jury found Chavis guilty of Criminal Trespass in the First Degree, as a lesser-included offense to Burglary Second Degree, and acquitted him of Misdemeanor Theft.

## II. STANDARD OF REVIEW

We review the Superior Court's decision to admit evidence under D.R.E.

---

[5] *Id.* at A69.
[6] *Id.* at A88.
[7] *Id.* at A89.

404(b) for abuse of discretion.[8]

### III. DISCUSSION

D.R.E. 404(b)(1) prohibits the use of evidence of a crime, wrong, or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." D.R.E. 404(b)(2) provides an exception to that rule. It permits the use of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[9]

In *Getz v. State*,[10] this Court discussed Rule 404(b) at length. Among the criteria we noted for admission of other crimes or bad act evidence is that such evidence must have "independent logical relevance," meaning that it must have probative relevance which is independent of its relevance as character evidence, and its probative value must not be substantially outweighed by the danger of unfair prejudice.[11] In addition, we established five guidelines to govern the admissibility of such evidence.[12]

Chavis contends that the evidence of his two prior convictions did not have independent relevance to the charged offenses. If the evidence was independently

---

[8] *Morse v. State*, 120 A.3d 1, 8 (Del. 2015).
[9] D.R.E. 404(b)(2).
[10] 538 A.2d 726 (Del. 1988).
[11] *Id.* at 730.
[12] *Id.* at 734.

relevant, he argues, the prejudicial effect of its admission substantially outweighed its relevance. Finally, he contends, the evidence did not satisfy *Getz's* third guideline, which is that the proof of the prior crimes must be "plain, clear and conclusive."

In response, the State argues that the evidence of Chavis' prior crimes was (1) relevant to prove his identity, intent, motive and plan in entering the Engs' hotel room; (2) proven by "plain, clear and conclusive" evidence; and (3) not too remote in time and was not unduly prejudicial. The State also contends that the trial court properly instructed the jury that the evidence could be used only for the limited purpose of determining the defendant's identify, intent, motive and plan. Finally, the State argues that, if there is any error, it is harmless beyond a reasonable doubt.

We believe the dispositive issue in this appeal is whether the evidence of the prior crimes was sufficiently "plain, clear and conclusive." The State argues that Chavis' pleas of guilty satisfy the requirement that the evidence be "plain, clear and conclusive." We agree that a plea of guilty is "plain, clear and conclusive" evidence of a defendant's participation in that crime.[13] With regard to the trespass case, the record indicates that Chavis pled guilty to remaining unlawfully in a building, specifically, Room 221 at the Days Inn Motel. With regard to the theft case, the

---

[13] *See Harden v. State*, 712 A.2d 475, 1998 WL 309841, at *3 (Del. May 29, 1998) (ORDER) ("A conviction is clear and convincing evidence of a defendant's participation in that crime.").

record appears to indicate that he pled guilty to unlawfully using a stolen credit card. Chavis' pleas of guilty establish those facts by "plain, clear and conclusive" evidence.

The other crimes evidence, however, goes beyond the facts encompassed in the guilty pleas and includes significant underlying facts, specifically that Chavis posed as a maintenance man in the trespassing case and that he entered the motel room at Days Inn to steal the credit card. Such underlying narrative facts must also satisfy *Getz's* requirement that other crimes evidence be "plain, clear and conclusive."

We have previously recognized that the testimony of an eyewitness or other witness with personal knowledge typically satisfies the "plain, clear and conclusive" requirement. [14] Detective Anderson, however, had no personal knowledge that Chavis had pretended to be a maintenance worker in the trespassing case or had entered a motel room in the theft case. His knowledge of those facts came from police reports he did not prepare and involved investigations in which he did not participate. Such secondhand knowledge does not satisfy *Getz's* requirement that

---

[14] *See Johnson v. State*, 983 A.2d 904, 934 (Del. 2009) (en banc) ("Eyewitness testimony is normally deemed sufficient to satisfy the plain, clear and convincing standard utilized for admission of other crimes evidence under Rule 404(b). [The victim's] testimony as to what [the defendant] stated to her personally and what she observed satisfies this evidentiary standard." (footnote omitted)).

9

proof of other crimes be by evidence which is "plain, clear and conclusive."[15]  The

trial judge erred by permitting the officer to testify about facts contained in the police

reports about which the officer had no personal knowledge.

Stripped of the above-discussed underlying facts, the other crimes have no

independent logical relevance.  Without such facts, they simply become evidence of

other crimes of the same or similar character as the charged offenses without

evidentiary value apart from their relevance as character evidence, which makes

them inadmissible under D.R.E. 404(a).

Finally, we do not believe that the decision to admit this evidence can be said

to be harmless.[16]  The evidence of the two prior convictions, and in particular the

---

[15] *See Renzi v. State*, 320 A.2d 711, 712-13 (Del. 1974) (finding that evidence of defendant's prior sale of narcotics was not "plain, clear and conclusive" where the confidential informant that completed the transaction did not testify, the allegedly purchased drugs and money used in the sale were not admitted into evidence, and the only evidence offered at trial regarding the drug sale was the testimony of an officer who did not witness the transaction);  D.R.E. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* 1 MCCORMICK ON EVIDENCE § 10 (8th ed. Jan. 2020) ("The common law system of evidence embodies a strong preference for admitting the most reliable sources of information.  This preference is reflected in the hearsay rule, the documentary original doctrine, and the opinion rule. . . . For example, by virtue of the opinion rule, the law prefers that a witness testify to facts, based on personal knowledge, rather than opinions inferred from such facts. . . . This requirement can easily be confused with the rule barring the in-court repetition of out-of-court statements considered hearsay.  Technically, if on its face the witness's testimony purports to describe observed facts but the testimony rests on statements of others, the objection is that the witness lacks firsthand knowledge.  In contrast, when on its face the testimony indicates the witness is repeating out-of-court statements, a hearsay objection is appropriate." (footnotes omitted)).

[16] *See Buckham v. State*, 185 A.3d 1, 13 (Del. 2018) (en banc) ("Not all errors call for reversal. But to deem an error harmless—and safely disregard it—we must have a 'fair assurance . . . that the judgment was not substantially swayed by the error.'  That is necessarily a case-specific inquiry;' one that requires us to 'scrutinize[] the record' to evaluate 'both the importance of the error and the strength of the other evidence presented at trial." (alteration and omission in

10

singularity of the maintenance worker ruse, could well have been significant to the jury. We cannot conclude with fair assurance that the jury was not substantially swayed by the admission of the two prior convictions.

The judgment of the Superior Court is reversed, and the case is remanded for proceedings in conformity with this opinion.

---

original) (footnotes omitted)); Super. Ct. Crim. R. 52(a) ("Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." (emphases omitted)).