**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE, )
)
      Plaintiff, )
)   I.D. No. 2409013530
v. )
)
CHARLES MONROE, )
)
      Defendant.

Submitted: October 6, 2025
Decided: October 13, 2025

### *On Defendant's Motion for Relief from Prejudicial Joinder: Denied*

Charles Monroe (hereinafter "Mr. Monroe") is charged in this Court by indictment with 34 counts of alleged criminal conduct. In terms of chronology, the charges begin with misdemeanor offenses in counts two, three, and four which are alleged to have taken place on September 3, 2024. These domestic violence allegations include two counts of Criminal Mischief and Reckless Burning. For ease of reference in the Court's analysis, the Court will refer to these allegations as Proposed Trial One.

A second series of allegations within the indictment stems from an incident on September 25, 2024. Those charges include First-Degree Burglary, Second-Degree Assault, Strangulation, First-Degree Unlawful Imprisonment, and Non-Compliance

with Bond Conditions. The Court will refer to these allegations as Proposed Trial Two.

The remaining set of allegations includes Stalking, Aggravated Act of Intimidation, two counts of Act of Intimidation, Terroristic Threatening, and multiple counts of Breach of Conditions of Bond During Commitment. The Court will refer to these allegations as Proposed Trial Three.

### *Parties' Contentions*

Through counsel, Mr. Monroe has filed a Motion for Relief from Prejudicial Joinder. He argues "[t]he majority of the evidence in these cases are separate and distinct…"[1] He presses the point of distinction by arguing he "is accused of damaging and burning property on September 3, 2024. The allegations on September 25, however, do not include any charges for the destruction of property, but rather, for violent behavior against Ms. Dunn."[2] Mr. Monroe has suggested the Court sever the indictment into the three trials detailed above.

As to prejudice, Mr. Monroe argues the jury may cumulate the evidence against him and use the evidence of one crime to infer a general criminal disposition.[3] Finally, Mr. Monroe argues he may be subject to embarrassment or confusion—he

---

[1] D.I. 16 at p. 5.
[2] *Id.*
[3] *Id.* at 6.

explains further that he may testify at trial, dependent on the State's case and this Court's decision on the instant motion.[4]

The State responded.[5] It argues joinder is appropriate because the entire indictment is based on a common scheme or plan.[6] Further, the State posits the entirety of the indictment involves the same victim and behavior.[7] Specifically, the State argues the Stalking charge requires proof of a course of conduct. Further, evidence of the other alleged crimes would be admissible under Delaware Rule of Evidence 404(b), which caselaw says is a consideration for this Court.[8] As to the evidence itself, the State tells the Court evidence it intends to present on Breach of Conditions of Bond During Commitment would also be admitted at trial on the alleged conduct from September 3rd and 25th because they contain admissions by Defendant.

### *Legal Standards*

This matter implicates the interplay of two Superior Court Criminal Procedural Rules, 8 and 14. Rule 8(a) provides as follows:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or

---

[4] *Id.*at 6-7.
[5] D.I. 17.
[6] *Id.* at p. 6.
[7] *Id.*
[8] *Id.* at p. 7 quoting *Monroe v. State*, 28 A.3d 418, 426 (Del. 2011).

transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Rule 14 provides Relief from prejudicial joinder:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney general to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

Mr. Monroe must demonstrate prejudice that requires severance.[9] "[M]ere hypothetical prejudice is not sufficient."[10] The decision on severance is within this Court's discretion.[11] The *Wiest* decision outlines the prejudice a criminal defendant may suffer warranting severance under this rule, each of which mirrors the prejudice Mr. Monroe argues to advance his position:

1. Joinder of the offenses may lead the jury to cumulate the evidence, leading to a finding of guilt that it would not find, without that evidence.

2. An inference of propensity for criminal conduct of the defendant, by the jury.

---

[9] *Wiest v. State*, 542 A.2d 1193, 1195 (Del. 1988); *Skinner v. State*, 575 A.2d 1108, 1118 (Del. 1990).
[10] *Skinner*, 575 A.2d at 1118.
[11] *Wiest*, 542 A.2d. at 1195.

3. Embarrassment or confusion while presenting a defense.

In *Wiest,* the defendant was charged with two separate burglaries, approximately five months apart. Defendant moved for severance. The State advised a co-defendant, who was in witness protection, and thus difficult to bring to Court, would testify he was at the scene of both burglaries with the defendant. The Court denied the motion to sever. During trial, however, that was not his testimony. The defense renewed its motion to sever. The motion was again denied. The Delaware Supreme Court reversed. Our Supreme Court determined the balance of factors weighed by this Court changed after the State's representation failed to materialize and severance was necessary. Therefore, this Court will consider the nature and quality of the State's proffered evidence in making this decision.

Related to this case and the nature of the crimes charged here is the *Skinner* decision. In *Skinner,* the Supreme Court focused on the "similar course of conduct…"[12] The Court also discussed the relevance of reciprocal admissibility, identifying it as a "pertinent factor" for this Court to consider. In assessing reciprocal admissibility, which may qualify as evidence under D.R.E. 404(b), Delaware Courts employ a *Getz* analysis.[13]

---

[12] *Skinner v. State,* 575 A.2d at 1118.
[13] See *Wiest,* 542 A.2d 1193 n.3 citing *Getz v. State,* 538 A.2d 726, 730 (Del. 1988).

The *Getz* factors include:

1. The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.
2. The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.
3. The other crimes must be proved by evidence which is "plain, clear and conclusive."
4. The other crimes must not be too remote in time from the charged offense.
5. The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.

Under *Getz,* if the evidence is admitted, it is for limited purposes and the jury must be instructed accordingly.

'Course of conduct' is the same language used by our General Assembly in the Stalking statute, which is at issue here. While used in distinct ways, this identical language is helpful in the Court's analysis, particularly as it relates to an indictment that alleges Stalking. In *Newman,* this Court denied a motion for prejudicial joinder, which included allegations of Stalking and Aggravated Act of Intimidation, finding the "charges here are interrelated and demonstrate a pattern of behavior that would provide justification to allow the Defendant's conduct through this period of time to be admitted in the trials of the Stalking and Aggravated Act of Intimidation."[14] The same result was reached more recently in *Rodgers,* where this Court addressed a

---

[14] *State v. Newman,* 2019 WL 460311 *1 (Del. Super.).

motion for relief from prejudicial joinder in a Stalking case.[15] In *Rodgers,* this Court concluded "[t]hese cases are so inextricably intertwined that the State would be seeking to admit some of the same evidence and illicit some of the same testimony in each of the trials. Severing this indictment into two individual cases would be a waste of judicial resources."[16]

## *Analysis*

At the Court's request, the State supplied a list of potential witnesses for these matters. The Court has reviewed this 3-page submission. Many witnesses, civilians, police officers, state employees, and hospital staff are duplicated across the three potential trials Mr. Monroe requests.

For Proposed Trial Two, the State would be required to prove to the jury that Mr. Monroe was Court-Ordered to have no contact with the alleged victim. That Court Order stems from his arrest on September 2nd. Most significantly, for Proposed Trial Three, the State would be required to put forth evidence before a jury that includes:

- As to the charge of Stalking, that Mr. Monroe engaged in a course of conduct, which is statutorily defined as "3 or more separate incidents…"

---

[15] *State v. Rodgers,* 2025 WL 1906492 (Del. Super.).
[16] *Id.* at *3.

- As to the charge of Stalking, that the course of conduct referenced above would cause fear of physical injury or cause another to suffer significant mental anguish.

- The indictment charges Stalking beginning on September 3, 2024—which incorporates the allegations from Proposed Trial One and Proposed Trial Two.

- As to the charge of Stalking, that Mr. Monroe threatened death or serious physical injury to the alleged victim.

- As to the charge of Stalking, that Mr. Monroe violated an Order prohibiting contact with the alleged victim.

- As to the charge of Non-Compliance with Bond, in count IX, that Mr. Monroe had contact with the alleged victim on September 25, after a Court Ordered him not to do so.

- As to the various charges of Breach of Conditions of Bond During Commitment, that Mr. Monroe continued to have contact with his alleged victim after his arrest.

- As to the three charges of Act of Intimidation (one Aggravated) that Mr. Monroe "did knowingly and with malice attempt to prevent [alleged victim], a victim or witness to a crime, from causing a complaint, indictment, or information, to be sought or prosecuted, or from assisting in the prosecution thereof."

The above evidence is interrelated across the three trials and is admissible across trials—therefore it is reciprocally admissible. If the Court were to grant the Defendant's motion, by the time of the third trial, that jury would hear evidence of everything alleged within the indictment—so that the State could attempt to establish its burden of proof on the charges of Stalking and Act of Intimidation. This reciprocal admissibility is a pertinent factor for the Court's consideration.[17] The probative value of evidence related to both alleged September incidents is significant as it relates to elements of fear of physical injury and mental anguish—which are required elements of proof on the Stalking charge. This probative value is further reinforced when considering the Acts of Intimidation charges as the State must attempt to establish there was an underlying crime or a trial for which the alleged victim must appear, in order for her to have been intimidated.

As to the *Getz* factors, as outlined above, the proffered evidence from September 2nd and September 25th is material to Stalking, Acts of Intimidation, and Non-Compliance with Bond charges. The evidence of events alleged to have taken place on September 2 and 25th meet a valid D.R.E. 404(b) purpose as it goes to motive, particularly for the Acts of Intimidation and Breach of Conditions of Bond. They may also go to intent to create fear or anguish. The proffer from the State suggests

---

[17] *Gibson v. State*, 314 A.3d 512 n. 91 (Del. 2025) citing *Caldwell v. State*, 780 A.2d 1037, 1056 n. 62 (Del. 2001).

the evidence is "plain, clear and conclusive," indeed, some of the evidence purports to include recorded calls by Mr. Monroe. The dates at issue are charged within this indictment, as such, they are not too remote to the crimes charged.

As to Mr. Monroe's assertions of prejudice, he has suggested the Court's ruling would impact his decision to testify. There has also been reference throughout the pleadings, scheduling conference, and oral argument to the alleged victim having recanted or not being cooperative with the State. Mr. Monroe states "[t]he credibility issues regarding that incident will differ from other events and effect Mr. Monroe's desire to testify and present his own case-in-chief." The Court has sincerely endeavored to determine exactly what this means, but frankly, any conclusion would be speculative. Mr. Monroe must carry the burden, and this opaque assertion does not suffice.

The Court notes if Mr. Monroe testified as to facts that could be rebut by information within the State's possession reserved for another count within the indictment, the State could properly cross-examine him using that information or use it in rebuttal—even if it were severed. Further, the Court does not find that prejudice exists in the way of confusion or embarrassment.

Finally, the Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403. Consistent with other

decisions of this Court, the Court finds the probative value of evidence from the incidents alleged to have occurred on September 2nd and 25th is substantial to the crimes, particularly of Stalking and Act of Intimidation. In balancing, the Court finds the probative value of the evidence outweighs any unfairly prejudicial effect.

**NOW, THEREFORE,** this 13th day of October 2025, Defendant's Motion for Relief from Prejudicial Joinder is DENIED.

**IT IS SO ORDERED**.

/s/Sonia Augusthy

Judge Sonia Augusthy