**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| VENATOR MATERIALS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No.: N19C-05-117 EMD CCLD |
| TRONOX LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: October 8, 2021
Decided: January 7, 2022

*Upon Plaintiff's Motions in Limine*
***GRANTED, in part, and DENIED, in part***

David E. Ross, Esquire, Garrett B. Moritz, Esquire, S. Michael Sirkin, Esquire, Adam D. Gold, Esquire, S. Reiko Rogozen, Esquire, Ross Aronstam & Moritz LLP, Wilmington, Delaware, *Attorneys for Plaintiff/Counterclaim Defendant Venator Materials Plc.*

Patricia A. Winston, Esquire, Barnaby Grzaslewicz, Esquire, Morris James LLP, Wilmington, Delaware, Glen Silverstein, Esquire, Michael J. Tiffany, Esquire, Stephanie L. Gase, Esquire, Daniel A. Johnson, Esquire, Leader Berkon Colao & Silverstein LLP, New York, New York, *Attorneys for Defendant/Counterclaim Plaintiff Tronox Limited.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a breach of contract action assigned to the Complex Commercial Litigation Division of the Court. Venator Materials Plc ("Venator") and Tronox Limited ("Tronox") both assert claims arising out of a preliminary agreement to negotiate a potential sale of a chemical plant by Tronox to Venator. Now before the Court are four motions *in limine* filed by Venator: (i) motion to exclude evidence relating to unrelated securities lawsuits (the "Securities Lawsuits Motion"); (ii) motion to preclude portions of Richard Feinstein's expert testimony (the

"Feinstein Motion"); (iii) motion to exclude certain evidence related to the background of Kevin Arquit (the "Arquit Motion"); and (iv) motion to preclude Tronox from testifying regarding Tronox's position regarding the July 14 Agreement (the "July 14 Agreement Motion").

For the reasons set forth below, the Arquit Motion and the Securities Lawsuits Motion are **GRANTED**. In addition, the Feinstein Motion and the July 14 Agreement Motion are **DENIED**.

## II. FACTS

Tronox and Venator are both TiO2 manufacturers.[1] In February 2017, Tronox agreed to acquire Cristal, another participant in the TiO2 market.[2] The FTC objected to the Tronox-Cristal merger on the grounds that it would lead to an unacceptable level of market concentration that was presumptively anticompetitive.[3] In July 2018, the FTC sought an injunction to prevent the merger from closing before a decision in the administrative proceeding.[4] The injunction was granted after a hearing in August 2018, finding that the merger would likely "lead to anticompetitive behavior among the industry's remaining players."[5]

Tronox attempted to address the FTC's concerns about market concentration by reducing its own market share.[6] In July 2018, Tronox and Venator entered into a preliminary agreement to negotiate a potential sale of a chemical plant by Tronox to Venator (the "July Agreement").[7] Because Venator was an existing market participant, the FTC would likely require Venator to divest some of its own assets before the FTC would approve the transaction.[8] The July

---

[1] Tronox's Opp. to Venator's Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 3 (D.I. No. 139).
[2] Venator's Opening Br. in Supp. of Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 1 (D.I. No. 128).
[3] *Id.* at 1–2.
[4] *Id.* at 2.
[5] *Id.*
[6] Tronox's Opp. to Venator's Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 4.
[7] Venator's Opening Br. in Supp. of Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 3.
[8] Tronox's Opp. to Venator's Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 4.

Agreement therefore included a "hell-or-high water" provision, which required Venator to take "all actions necessary" to obtain antitrust approval from the FTC.[9] Venator therefore agreed to take all actions necessary to address any concerns that the FTC might raise.

Problems arose as Tronox and Venator negotiated the final stock purchase agreement (the "SPA"). According to Tronox, Venator refused to include the previous "hell-or-high water" provision in the SPA. Instead, the only step that Venator was willing to take was to divest its joint venture interest in the Louisiana Pigment Company to Kronos—an existing joint venture partner.[10] Venator's proposal was problematic because Kronos was already a major participant in the TiO2 market. The FTC rejected Venator's proposal when Venator submitted it for FTC approval because it failed to address the concerns about reduced market participants and market concentration.[11] As a result, Tronox and Venator never entered the final SPA, and Tronox was required to sell the chemical plant to another buyer at a lower price.

Each party accuses the other of violating the July Agreement. Tronox alleges that Venator breached its "hell-or-high water" commitment by insisting on taking only one action to address the FTC's antitrust concerns (*i.e.*, the sale of its LPC interest to Kronos).[12] Venator claims that Tronox failed to pay a "Break Fee" that had become due under the July Agreement.[13]

### III.    APPLICABLE LAW

To be admissible, evidence must be relevant, meaning it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[14] To determine relevance, the Court must

---

[9] *Id.*
[10] *Id.* at 4–5.
[11] *Id.* at 5.
[12] *Id.*
[13] Compl. at ¶ 1.
[14] D.R.E. 401.

examine the purpose for which evidence is offered and whether it is of consequence to the action and advances the likelihood of asserted facts.[15]  Under D.R.E. 403, the Court may exclude evidence where the danger of undue prejudice substantially outweighs its probative value.[16] Probative value concerns "the tendency of the evidence to establish the proposition that it is offered to prove."[17]

The admissibility of expert testimony is governed by Delaware Rules of Evidence 702 ("Rule 702").  Rule 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[18]

When applying Rule 702, Delaware Courts have adopted the U.S. Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals*.[19]  *Daubert* requires the trial judge to act as gatekeeper and determine whether the expert testimony is relevant and reliable and whether it will assist the trier of fact.[20]  The Delaware Supreme has adopted a five-part test for trial courts to consider when determining the admissibility of scientific or technical testimony.  The trial court must decide whether:

> (i) the witness is qualified as an expert by knowledge, skill, experience, training or education; (ii) the evidence is relevant and reliable; (iii) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (iv) the expert testimony will assist the trier of fact to understand the evidence or to

---

[15] *Sheehan v. Oblates of St. Francis de Sales,* 15 A.3d 1247, 1254 (Del. 2011).
[16] D.R.E. 403.
[17] *Getz v. State,* 538 A.2d 726, 731 (Del.1988).
[18] D.R.E. 702.
[19] *See Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 794 (Del. 2006) ("Though the United States Supreme Court's interpretations of F.R.E. 702 in *Daubert* and *Kumho* are only binding upon federal courts, this Court has expressly adopted their holdings as correct interpretations of D.R.E. 702") (internal citations omitted).
[20] *See id; see also Daubert . Merrell Dow Pharmaceuticals*, 509 U.S. 579, 582 (1993) (internal citations omitted).

determine a fact in issue; and (v) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[21]

## IV.  THE MOTIONS

### A. THE JULY 14 AGREEMENT MOTION

Venator seeks to prove that Tronox violated the "Exclusivity Period" of the July Agreement. Specifically, Venator alleges that Tronox's CEO secretly communicated with a banker advising another potential purchaser about the transaction.[22] Venator sought information about this subject at the deposition of Jeff Neuman, Tronox's general counsel. However, Tronox blocked Mr. Neuman from testifying whether, as he understood the July Agreement:

1. Tronox was "permitted to have discussions with parties other than Venator regarding an alternative transaction."

2. "During the exclusivity period," Tronox "could . . . communicate about Ashtabula with advisers of other potential bidders."

3. Tronox could tell "another potential bidder or its advisers that if the deal with Venator failed, Tronox would come back with that other bidder to do a deal."

4. Tronox could "ask its employees and advisers to shift their focus away from negotiating an SPA with Venator towards preparing to negotiate an SPA with another party.[23]

Instead, Tronox either instructed Mr. Neuman to testify regarding "Tronox's position" on the July Agreement or, in some cases, prevented him from answering at all.[24]

Venator argues that testimony regarding "Tronox's position" is irrelevant because it is neither probative nor material to any issue in the case. Instead, Venator contends that Tronox's position is simply its "litigation contentions," which have no bearing on the events in the case or

---

[21] *Cunningham v. McDonald*, 689 A.2d 1190, 1193 (Del. 1997).
[22] Venator's Mot. to Prelude Tronox From Testifying Regarding "Tronox's Position" Regarding the July 14 Agreement at 1 (D.I. No. 129).
[23] *Id.* at 3.
[24] *Id.* at 4.

5

the meaning of the July Agreement.[25]  Venator adds that testimony regarding "Tronox's position" would be highly prejudicial to Venator because it "effectively allows Tronox to offer testimony to support its claims while preventing Venator from testing how those claims compare to the actual facts."[26]

In response, Tronox argues that its position are not merely arguments but rather historical facts that bear on the issues in the case.  Tronox points out that a key issue in this case is how the parties understood the contractual terms as they negotiated them.[27]  Additionally, Tronox argues that any relevancy challenge is better resolve during trial, once the Court has heard the questions being asked and seen the evidence being presented.[28]

### B. THE FEINSTEIN MOTION

Tronox seeks to have Richard Feinstein testify as an expert witness.  Mr. Feinstein is a lawyer who formerly led the FTC's Bureau of Competition; however, Mr. Feinstein is not an economist and never participated in economic modeling at the FTC.  Tronox offers Mr. Feinstein on the issue of whether "the FTC would have approved Venator as a buyer" of the chemical plant if Venator had proposed divesting a specific asset to a new market entrant.[29]  Mr. Feinstein's opinion is based on his "years of experience with the FTC."[30]  At deposition, Feinstein acknowledged that he himself did not perform any economic modeling or economic analysis in reaching his opinion.[31]

---

[25] *Id.* at 5.
[26] *Id.* at 5–6.
[27] Tronox's Opp. to Venator's Mot. to Preclude Tronox from Testifying Regarding "Tronox's Position" Regarding the July 14 Agreement at 1–4 (D.I. No. 132).
[28] *Id.* at 1.
[29] Venator's Opening Br. in Supp. of Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 1.
[30] *Id.* at 5.
[31] *Id.* at 4–5.

Venator argues that Mr. Feinstein's testimony should be excluded because (i) Mr. Feinstein lacks sufficient expertise to offer this opinion, and (ii) Mr. Feinstein does not base his opinion on a reliable methodology. The thrust of Venator's argument is that the FTC reviews transactions to assess their likely effects on competition, which involves extensive economic analysis.[32] Venator notes that Mr. Feinstein did no such analysis and lacks any expertise in economics. Therefore, Venator contends that Mr. Feinstein is not able to opine on whether the FTC would have approved a transaction involving Venator.

In response, Tronox points out that Mr. Feinstein has extensive experience in reviewing mergers and divestitures for regulatory approval and in fact drafted official FTC guidelines on these topics.[33] Tronox adds that Mr. Feinstein's opinion expressly draws upon a record of economic facts and analyses.[34] Tronox argues that any further challenges go to weight, rather than to admissibility because Mr. Feinstein otherwise is competent to testify as an expert.[35]

## C. THE ARQUIT MOTION

Venator intends to call Kevin Arquit as an expert witness. Mr. Arquit is an antitrust lawyer who formerly served as the Director of the Bureau of Competition at the FTC. Venator seeks to exclude examination or evidence about three subjects that Tronox explored at his deposition.[36] First, Mr. Arquit was subject to a *Daubert* challenge in a prior case, but the case settled before the court ruled on it. Second, Mr. Arquit was a plaintiff in a confidential arbitration in which the defendant asserted a counterclaim. Mr. Arquit explained that the matter was not a claim by a former client, that the arbitration had no relation to antitrust, and that he

---

[32] *Id.* at 2–3.
[33] Tronox's Opp. to Venator's Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 1.
[34] *Id.* at 2–3.
[35] *Id.* at 9–10.
[36] Venator's Motion to Preclude Examination or Evidence Related to Kevin Arquit at 1–3 (D.I. No. 127).

was not found to have any personal liability. Third, a former client of Mr. Arquit's former law firm brought a malpractice lawsuit against the firm about 20 years ago. The lawsuit alleged that the firm had improperly delegated work to junior lawyers with limited experience. Mr. Arquit was not named as a defendant and had left the firm before the lawsuit was filed. He does not know the terms on which the firm resolved the case.

Venator argues that evidence of these three actions is irrelevant because none of the matters is probative with respect to Mr. Arquit, his opinion, or the events of this case.[37] Venator adds that the evidence would be unduly prejudicial even if it possessed any probative value.[38] Tronox does not oppose Venator's motion.[39] Tronox agrees that the confidential arbitration and malpractice lawsuits are irrelevant. Furthermore, Tronox agrees that the prior *Daubert* challenge is irrelevant and will not question him on it, "[u]nless Venator affirmatively puts the *Daubert* motion at issue."[40]

## D. THE SECURITIES LAWSUITS MOTION

Venator is the defendant in securities class actions pending in Texas federal court and the state courts of Texas and New York. The class actions relate to alleged disclosure violations in connection with Venator's initial public offering in August 2017 and secondary public offering in December 2017.[41] Certain witnesses who may testify at trial have also been named as defendants in the securities lawsuits.

Venator argues that evidence relating to the securities lawsuits would be irrelevant to the current case and unduly prejudicial even if it had some relevance.[42] Tronox "generally agrees

---

[37] *Id.* at 3–6.
[38] *Id.*
[39] Tronox's Response to Venator's Mot. to Preclude Examinations or Evidence Related to Kevin Arquit at 1–2 (D.I. No. 134).
[40] *Id.* at 1.
[41] Venator's Mot. to Exclude Evidence Relating to Unrelated Securities Lawsuits at 1–2 (D.I. No. 130).
[42] *Id.* at 3–6.

with Venator's conclusion that such testimony is inadmissible at this time" and will not elicit testimony about the securities lawsuits.[43]  However, Tronox cautions that Venator may put the good character of its witnesses into issue during trial, thereby opening the door to questioning about their credibility and character for truthfulness.[44]  Tronox may then ask the Court to reconsider this issue and allow cross-examination about the securities lawsuits.[45]

## V.  DISCUSSION

Tronox does not oppose the Arquit Motion or the Securities Lawsuits Motion.  The Court will, therefore, grant these motions.  However, the Court may revisit the issues raised in the motions if evidence adduced at trial makes them relevant.

The Court is denying the Feinstein Motion.  Mr. Feinstein is qualified to testify as to whether the FTC would have approved Venator as a buyer of the chemical plant.  Mr. Feinstein has over 40 years of antitrust experience and extensive experience in reviewing mergers and divestitures for regulatory approval.[46]  As Director of the FTC's Bureau of Competition, Mr. Feinstein oversaw approximately 80 enforcement actions.[47]  Furthermore, Mr. Feinstein based his opinion on documentary evidence, FTC practices and procedures, and an economic analysis of market concentration.[48]  Venator's arguments for excluding Mr. Feinstein ultimately go to the weight of his testimony and not to his qualifications as an expert.  Venator is free to highlight the weaknesses of Feinstein's analysis on cross examination, but not to exclude his testimony altogether.[49]

---

[43] Tronox's Response to Venator's Mot. to Exclude Evidence Relating to Unrelated Securities Lawsuits at 2 (D.I. No. 133).

[44] *Id.*

[45] *Id.*

[46] Tronox's Opp. to Venator's Mot. to Preclude Portions of Richard Feinstein's Expert Testimony at 1.

[47] *Id.*

[48] *Id.* at 2.

[49] *See Estate of Valdez v. BNSF Ry. Co.*, 2020 WL 7365800, at *5 (Del. Super. Dec. 15, 2020) ("Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to

The Court will also deny the July 14 Agreement Motion. The Court finds that it would be premature to rule upon the relevancy and potential prejudice of this topic. Currently, the Court has few details on what "Tronox's position" even is or what role it may play in the trial. Furthermore, the Court has not heard what questions the parties will ask to the witnesses or seen the evidence that will contextualize those questions. In short, the issues of relevancy and prejudice that Venator raised are better resolved at trial, if necessary.[50]

## VI.    CONCLUSION

The Arquit Motion and the Securities Lawsuits Motion are **GRANTED**. The Feinstein Motion and the July 14 Agreement Motion are **DENIED**.

**IT IS SO ORDERED**

Dated: January 7, 2022
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeExpress

---

the weight to be accorded the expert testimony rather than its admissibility.") (quoting *Perry v. Berkley*, 996 A.2d 1262, 1270–71 (Del. 2010)).

[50] *See Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 1100471, at *1 (D. Del. Mar. 7, 2019) ("A motion *in limine* is appropriate for 'evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose.' In other instances, it is necessary to defer ruling until during trial, when the judge can better estimate the impact of the evidence.") (internal citations omitted).