# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       :
                         :      ID Nos. 1606005381A/B

v.                        :
                         :

JAMAR WATERS,         :
                         :

          Defendant.     :

Submitted:  January 3, 2025
Decided:    March 26, 2025

## ORDER

On this 26th day of March 2025, having considered Defendant Jamar Waters' appeal of the Commissioner's Report and Recommendation (the "Report"), the State's response, and additional evidence and argument relevant to that appeal, it appears that:

1. The convictions in this case involved an armed robbery of a gas station by Mr. Waters and his co-defendant. Initially, the Court found Mr. Waters guilty of one count of Possession of a Firearm by a Person Prohibited after a bench trial held contemporaneously with a jury trial on other charges.[1] The jury did not reach a unanimous verdict, however, on four accompanying felony charges. Thereafter, a second jury convicted Mr. Waters of two counts of Robbery First Degree and one count of Possession of a Firearm During the Commission of a Felony.[2] At sentencing, Mr. Waters presented no opposition to the State's petition to declare him a habitual offender pursuant to 11 *Del. C.* § 4214(d). As a result, the Court sentenced

---

[1] Bench Trial Decision Tr., at 4:23–5:4 (Sep. 11, 2017).
[2] The second jury acquitted Mr. Waters of the charge of Conspiracy Second Degree.

him to an unsuspended ninety years' incarceration combined, which represented the minimum mandatory sentences for all convictions.

2.     Mr. Waters filed the present motion for postconviction relief after his unsuccessful direct appeal. The Court appointed a Superior Court commissioner to preside over the matter who ordered briefing, considered the affidavits of Mr. Waters' two successive trial attorneys, and then held a supplemental evidentiary hearing. Mr. Waters' first trial attorney (hereinafter, his "pretrial counsel") and the trial attorney who represented him at both his first and second trials (hereinafter, his "trial counsel") testified at that hearing.

3.     The Commissioner's Report recommends that the Court deny Mr. Waters' Superior Court Criminal Rule 61 motion.[3]   Presently, he appeals the Commissioner's findings and recommendations. He raises four objections based on her finding of no ineffective assistance of counsel. The first three objections contend the Commissioner erred by not properly considering the following: (1) Mr. Waters' trial counsel's failure to request redactions to his police interview played to the jury; (2) pretrial and trial counsels' failure to provide Mr. Waters discovery that, in turn, impacted Mr. Waters' decision to reject a plea bargain with a twelve year recommended sentence; and (3) his trial counsel's failure to seek suppression of a victim's in-court and out-of-court identifications.  Mr. Waters' fourth objection seeks a new trial based on the alleged cumulative prejudice of the first three.

4.     In this appeal, the Court first considered the parties' written submissions and the trial and post-trial records. The undersigned judge then ordered a second evidentiary hearing. That hearing focused on the trial attorney's decision to not request two categories of redactions from Mr. Waters' videotaped interview

_____

[3] The Report is attached as Exhibit A.

2

after the robbery.[4] The two categories included the investigating officer's statements that he did not believe Mr. Waters' claim that he did not commit the robbery and Mr. Waters' references to dealing drugs to his co-defendant.

5. As to the procedural standard applied on appeal, the Court considers only Mr. Waters' written objections to the Commissioner's Report.[5] When doing so, the Court must consider, *de novo,* whether the Commissioner erred when deciding those objected-to matters.[6] As to the substantive standard applied on appeal, the same standard applied by the Commissioner applies to the Court's *de novo* review. Here, Mr. Waters' objections sound in ineffective assistance of counsel, which require the Court to determine if pretrial and trial counsel committed error(s) that deprived him of his Sixth Amendment Right to Counsel pursuant to *Strickland v. Washington.*[7] The *Strickland* test has two-parts. A movant must meet both requirements to justify relief.[8]

6. The first inquiry is objective and requires the movant to demonstrate that his or her attorney's performance was unreasonable.[9] It includes a strong presumption that Mr. Waters' counsel performed reasonably.[10] To that end, hindsight based only on a poor result does not control.[11] The second inquiry under the *Strickland* test requires the movant to demonstrate that the professional error(s) caused the defendant actual prejudice.[12] That requires the movant to demonstrate he

---

[4] Crim. I.D. No. 1606005381A/B, D.I. 110 [for consistency purposes, because the proceedings were bifurcated into an A-trial and a B-trial, all docket citations hereinafter use the docket identification number from the A-trial].

[5] Super. Ct. Crim. R. 62(a)(5).

[6] Super. Ct. Crim. R. 62(a)(5)(iv).

[7] 466 U.S. 668 (1984); *see also Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (wherein the Delaware Supreme Court acknowledged and applied the *Strickland* standard).

[8] *Strickland*, 466 U.S. at 687.

[9] *Id.*

[10] *Id.* at 689.

[11] *Id.*

[12] *Id.* at 687.

3

or she had a reasonable probability of a different result at trial but for the professional error(s).[13]

7.    Mr. Waters' weightiest objection is his first one, which was also the subject of the second evidentiary hearing. There, Mr. Waters contends that his trial counsel performed deficiently because he neither requested redactions from Mr. Waters' taped interview nor the issuance of a limiting instruction. Redactions that he feels would have been appropriate include: (1) the investigating officer's statements, while questioning Mr. Waters, that expressed doubts about Mr. Waters' candor; and (2) Mr. Waters' admission to prior drug dealing. At the outset, the State conceded that trial counsel could have secured the redactions, or a limiting instruction, had he requested them.[14] For the reasons that follow, however, the Commissioner correctly found that Mr. Waters failed to meet both *Strickland* criteria.

8.    As to the first criteria—deficient performance—the Commissioner correctly found trial counsel's conduct reasonable under *Strickland*. Granted, statements made by an officer in an interview of a defendant that directly impugn a defendant's credibility are objectionable.[15] Such statements can be aptly described as "reverse vouching." Mr. Waters identifies the following statements made by the detective that were objectionable:

- "why can't you just tell the truth?" contemporaneously with his contention that Mr. Waters' co-defendant planned the robbery;[16]

- "I think your heart is telling you something different" in response to Mr. Waters denying his involvement;[17]

---

[13] *Id*. at 694.
[14] D.I. 114.
[15] *Holtzman v. State*, 718 A.2d 528, 1998 WL 666722, at *5 (Del. Jul. 17, 1998)
[16] App'x to Pet'r's Am. Mot. for Postconviction Relief, Redacted Statement at A611:193.
[17] *Id*. at A612:217.

4

- the detective's insistence that Mr. Waters tell him "what really went down" and "it is one hundred percent okay to tell the truth[;]"[18] and

- "[y]ou got to level up with me."[19]

Mr. Waters adamantly denied any involvement in the robbery throughout the interview, however. Those persistent denials, and the impossibility of placing them before the jury without a stipulation with the State, factor significantly into the Court's analysis to follow.

9.  At the outset, trial counsel testified at the second Rule 61 evidentiary hearing that he believed that Mr. Waters insistence of innocence in the face of the detective's questioning bolstered his credibility.[20] He also believed that Mr. Waters' frank admission to having supplied drugs to his co-defendant increased it.[21] In hindsight, trial counsel's actions did not gain Mr. Waters the acquittal he desired. Nevertheless, that tactic did not objectively rise to the level of a *Strickland* deficiency given the presumption of reasonableness afforded trial counsel.

10.  Furthermore, trial counsel's performance was not objectively deficient for another reason. Namely, a defendant's statements in a police interview, when offered into evidence by the State as admissions, can serve as double-edged swords. Some are frank confessions of guilt. Others can benefit a defendant by placing the defendant's version of events before the jury without the risk that accompanies

---

[18] *Id*.

[19] *Id*. at A610:169

[20] Evidentiary Hr'g Tr., at 30:1–8 (Aug. 30, 2024).

[21] *See* Trial Tr., Vol. B, at 90:23–91:15 (Oct. 11, 2017) ("[o]ne of the things that has been consistent, however, . . . was Jamar Waters throughout his entire 20-minute interview[.]" "Mr. Waters' story never changed. He did submit to the officers that he sold dope occasionally, arguably causing trouble for himself in that regard, but what he didn't do was ever admit to the robbery. Why not? Because he wasn't there. Because he had nothing to do with the robbery . . . that occurred at the U.S. Gas Station"). In fact, trial counsel raised a nearly identical argument during his closing in the first jury trial. Trial Tr., Vol. B, at 80:11–18 (Sep. 7, 2017) (arguing that Mr. Waters consistently maintained noninvolvement during the detective interview).

testifying. That benefit, in turn, can make a defense attorney's decision to not object to the statement more reasonable.

11. In this case, the statement included Mr. Waters' persistent denial of guilt for the robbery.[22] When considering the circumstances known to trial counsel before the conviction, trial counsel could have reasonably expected the interview to help Mr. Waters. Notably, the benefit of avoiding cross-examination, gained through the stipulated admission of the statement, could not have been secured without the State's consent. The State was the only party with the ability to introduce the statement as an admission by a party opponent. In contrast, Mr. Waters, if he were the proponent, could not have admitted the statement himself because it would have been inadmissible hearsay. Consequently, the benefit Mr. Waters could have reasonably expected to receive from the statement, which included the objectionable material, must be factored into whether trial counsel performed deficiently. Here, that benefit, together with trial counsel's argument in summation referencing Mr. Waters' denials of guilt in the face of the detective's skepticism, meant no objective deficiency under *Strickland*.

12. Furthermore, Mr. Waters' admission to drug dealing does not detract from trial counsel's reasons for not seeking a redaction. Admission of the statement permitted trial counsel to argue in closing that Mr. Waters credibly denied involvement because he truthfully admitted to other illegal conduct.[23] Under the circumstances of this case, the fact that trial counsel did not request a limiting instruction under D.R.E. 404(b) was also not objectively unreasonable. There, the

---

[22] During the course of the interview with the detective, Mr. Waters denied his involvement in the robbery no less that ten separate times. App'x to Pet'r's Am. Mot. for Postconviction Relief, Redacted Statement at A605–12.

[23] *Id.* at A609:158.

6

choice to not do so fell within the proper parameters of a tactical call by the trial attorney.

13.     The Commissioner also did not err when finding that Mr. Waters failed to meet the second *Strickland* criteria regarding the redactions.   Namely, Mr. Waters demonstrates no reasonable probability of a different result because  trial counsel did not insist on redactions or ask for a limiting instruction.   In one sense, as explained above, the statement, even with the objectionable material, could have reasonably helped Mr. Waters who chose not to testify.   Once again, he adamantly denied any involvement in the robbery throughout.[24]

14.     Moreover, the totality of the evidence against him was very strong, which means there was no concrete prejudice in *Strickland*'s terms.  The testifying victim was one-hundred percent certain that he saw Mr. Waters' face and that he was the perpetrator.[25]  That same victim reviewed a six photograph lineup within twenty-four hours of the robbery and identified Mr. Waters.[26]  In addition, the jury saw a social media picture of Mr. Waters and his co-defendant, where Mr. Waters wore the exact same clothes and same bandana worn by the perpetrator who held the gun in the gas station's surveillance video.[27]   Likewise, the unquestionable similarity between the very unusual, long barreled .22 revolver shown on the video during the robbery with the one linked to Mr. Waters provided additional evidence of his guilt.[28]

---

[24] Given the benefit to Mr. Waters in introducing the statement, it would be difficult for the Court to understand what benefit the State received from its admission into evidence as an admission by a party opponent, other than from possibly the agreed upon potion referencing Mr. Waters' drug dealing with his co-defendant.  That would make it more likely that the two possessed the motive to commit the robbery together.

[25] Trial Tr., Vol. B, at 24:3–7 (Oct. 11, 2017).

[26] *Id*. at 25:1–26:2.

[27] Bench Trial Decision Tr., at 3:5–16 (Sep. 11, 2017).

[28] *Id*. at 2:18–3:4; *see also Waters v. State*, 213 A.3d 88, 2019 WL 2635742, at *1 (Del. Jun. 26, 2019).

15. Finally, the Court independently presided over the first trial and was firmly convinced that Mr. Waters had committed the robbery. More specifically, in the contemporaneous bench trial, the Court found Mr. Waters guilty of possessing the handgun shown on the video during the robbery. When doing so, the Court did not consider the detective's reverse vouching or Mr. Waters' prior drug dealing. Where one trier of fact (via a bench trial) was firmly convinced of Mr. Waters' involvement in the armed robbery, redactions and a limiting instruction would not have resulted in *a reasonable probability* of a different result. On these facts, the Commissioner correctly found that Mr. Waters failed to meet his burden under the second *Strickland* inquiry.

16. Mr. Waters relies significantly upon the Delaware Supreme Court decision in *Hassan-El v. State*[29] when addressing both *Strickland* criteria. His case is distinguishable from *Hassan-El* for two reasons, however.

17. First, the *Hassan-El* decision, issued on direct appeal, involved an 11 *Del. C.* § 3507 statement.[30] There, the defendant had unsuccessfully objected to an officer's interpretative narrative during the questioning of a defendant.[31] The defendant had also requested a limiting instruction.[32] In contrast, Mr. Waters' postconviction situation involves (1) the parties' stipulation to an admission of an otherwise inadmissible statement that could have reasonably been expected to help Mr. Waters, and (2) trial counsel's direct reliance upon the challenged statements in summation.

18. Second, the nature of the interpretative narrative in *Hassan-El* was significantly more prejudicial than the statements in Mr. Waters' case. Specifically,

---

[29] 911 A.2d 385 (Del. 2006).
[30] *Id*. at 395.
[31] *Id*.
[32] *Id*.

in *Hassan-El*, the officer narrated that the police *knew* the defendant was guilty and the officer expressly stated he had inside knowledge regarding the defendant's guilt.[33] The objectionable statements by the detective in Mr. Waters' interview did not approach the level of those in *Hassan-El*. In that way, trial counsel's failure to request redactions caused significantly less prejudice than the *Hassan-El* statements. That lesser prejudice, when considered with the reasonably expected benefit, further supports finding neither objective deficiency nor concrete prejudice.

19.     The Commissioner also did not err when addressing the contentions Mr. Waters raises in his second objection. Namely, Mr. Waters contends that trial counsel's allegedly unreasonable failure to provide him discovery material caused him to reject a more favorable plea offer. The Commissioner held the first posttrial evidentiary hearing with both trial counsel present.[34] She then found that the trial attorney who took the matter to trial discussed the evidence with Mr. Waters beforehand. On review, the postconviction record supports her finding that trial counsel specifically discussed the incriminating video, the similarities in clothing between the social media post and the robber, and all discovery materials with Mr. Waters. She did not err when finding there was no objectively deficient performance on that basis.

20.     Mr. Waters' third objection—the failure to file a motion to suppress the victim's identification of Mr. Waters—provides no basis to support that the photo lineup or the in-court identification were impermissibly suggestive. On these points, the Commissioner correctly recognized that the Supreme Court's decision on direct appeal was dispositive. To that end, the Supreme Court recognized that neither the victim's in-court identification nor the out-of-court photo lineup were impermissibly

---

[33] *Id*. at 396–97.
[34] D.I. 94.

suggestive.[35]  The Commissioner correctly found no prejudice under the circumstances.

21.  Finally, Mr. Waters' fourth objection—the cumulative effect of the first three alleged errors—also does not justify relief.  Mr. Waters did not demonstrate ineffective assistance of counsel regarding any of his three specific objections.  Alternatively, the Commissioner correctly recognized that even when accepting the alleged cumulative prejudice, he did not meet his burden of demonstrating a reasonable probability that the result would have been different but for the alleged errors.

WHEREFORE, the Court adopts the Report attached as Exhibit "A" in its entirety for (1) the reasons set forth in the Report and (2) the additional reasons provided in this Order.  As a result, Mr. Waters' motion for postconviction relief is denied.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark<br>Resident Judge

oc:  Prothonotary
cc:  The Honorable Andrea M. Freud
     Kevin Smith, DAG
     Natalie Woloshin, Esquire (Rule 61 Counsel)
     Pretrial Counsel
     Trial Counsel

---

[35] *See Waters*, 213 A.3d 88, 2019 WL 2635742, at *2 (finding that "under the totality of the circumstances the photo array was not impermissibly suggestive, and the identification did not need to be excluded from the evidence at trial").

# Exhibit A

STATE OF DELAWARE,    :

           :

           :   ID No. 1606005381 A/B

           :

v.          : RK 16090237 01 ROBBERY 1ST

           : RK 16090238 01 ROBBERY 1ST

JAMAR WATERS,    : RK 16090239 01 PFDCF

 SBI # 00437878    : RK 17070147 01 PFBPP PABP

           :

    Defendant.   :

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## COMMISSIONER'S REPORT AND RECOMMENDATION
### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Kevin B. Smith, Deputy Attorney General, Department of Justice, for the State of Delaware.

Natalie S. Woloshin, Esq., Woloshin Lynch & Associates.

FREUD, Commissioner
February 29, 2024

   Jamar Waters ("Waters") was found guilty following a jury trial on October 12, 2017, of two charges of Robbery First Degree, 11 *Del.C.* §832; Possession of a

Firearm During the Commission of a Felony, 11 *Del.C.* §1448. On September 11, 2017, Waters was also found guilty during a Bench Trial on one count of Possession of Ammunition by a person prohibited, 11 *Del.C.* §1448.

The case went to a jury trial on all the charges, except for PFBPP, on September 6, 2017, and lasted four days. The court held a simultaneous bench trial on the PFBPP charge. The jury could not reach a verdict on the two charges of Robbery First Degree, PFDCF, and Conspiracy Second Degree and therefore the Court declared a mistrial on those charges. The Court did, however, find Waters guilty of PFBPP after the Bench Trial.

The State retried Waters for the two counts of Robbery First Degree, PFDCF, and Conspiracy Second Degree. The case went to a jury trial on October 9, 2017, and lasted four days. The jury returned verdicts of guilt for both counts of Robbery First Degree, and PFDCF. The jury found Waters not guilty of Conspiracy Second Degree.

The State filed a motion to declare Waters a habitual offender. On April 10, 2018, the Superior Court granted the motion and sentenced Waters to the minimum sentence of 90 years at Level V incarceration.

A Notice of Appeal was timely filed on May 10, 2018. The Supreme Court affirmed the decision on June 26, 2019.

On November 27, 2019, Waters filed a Motion for Postconviction Relief, *pro se*. Natalie Woloshin, Esq., was appointed as counsel for the Postconviction proceedings. After briefing was complete, the Court has additional questions for the parties to address and evidentiary hearing was held on March 22, 2023. This resulted in the Court requesting that the parties supplement their briefing to be considered for Waters' Motion for Postconviction Relief. As the briefing has completed, the matter is ready for my review.

## WATER'S CONTENTIONS

Ground One          Trial Counsel failed to provide Mr. Waters with effective representation in the pretrial and trial phases of the case in violation of the Sixth Amendment rights of the United States Constitution and his rights under Article I, § § 4, 7, and 9 of the Delaware Constitution.

    A. The Pretrial Phase

      1. Trial Counsel was ineffective for failure to move to suppress the out-of-court and in-court eyewitness identification, resulting in prejudice to Mr. Waters.

      2. Trial Counsel was ineffective for failing to provide Mr. Waters with the discovery which would have cause him to accept a plea to twelve years.

    B. The Trial Phase

      1. Trial Counsel failed to redact incriminating statements from Mr. Waters interview before it was played at trial.

## FACTS

The following are the facts as set forth by the Delaware Supreme Court on appeal:

> According to the evidence introduced at trial, on June 6, 2016, Amarjeet Singh and Garender Singh were working at a gas station in Dover. A white and a black male, identified as Jason Cline and Jamar Waters, respectively, entered the store. Waters produced a gun and demanded money from Amarjeet. After getting $200-300 from Amarjeet, Waters pointed the gun at Garender and demanded money. A surveillance video captured the event, although with limited images of the black male's uncovered face.

14

The two men fled from the scene of the crime. Responding Dover police officers apprehended Cline right after the robbery. The police took Cline back to the gas station where Amarjeet identified Cline as the white male participating in the robbery. Amarjeet described the other robber as a black male with long dreadlocks and a black shirt. Searching the Facebook posts of Cline's acquaintance, detectives found a recent photograph of Cline and Waters together. Police prepared a photo array which included Waters' DELJIS photograph. The other five individuals were randomly chosen black males with dreadlocks—three with short hair and two with long hair. Only Waters' photograph had an individual with a black shirt and long hair. The day after the robbery Amarjeet looked at the photos, identified Waters, and said he was 100% certain the photo depicted the black male who participated in the robbery.

Cline pled guilty to second degree robbery. At trial, Cline testified that he was not involved in the crime, and that Waters was not at the gas station. The State introduced the video of an unmasked robber taking money from the victims, the Facebook post of the two men together, and the victim's in-court and out of court identifications of Waters. A Superior Court jury convicted Waters of crimes related to the robbery. The trial judge convicted Waters of the weapons offense. The trial judge sentenced Waters as a habitual offender to 90 years' incarceration.

At the evidentiary hearing, Waters initial counsel, Matthew Warren Esq., testified that he recalled viewing the videotape of the incident, which he described as "grainy" and that he believed it was a video of a video.[36] He characterized the video as blurry and believed the robbers had masks on [37] and that he could not tell

---

[36] Tr. at 14-15.
[37] A review of the video reveals that Warren's memory was incorrect in fact the robber was not masked. See Super. Ct. Op. and Resident Judge Clark's verdict. Tr. 31-32

who was who.[38]  Mr. Warren also stated that he could not recall if he showed the video to Waters but that he believed that there were issues at the time with bringing a DVD player into the prison that may have prevented him from showing Waters the video.[39]  Mr. Warren did say he discussed the content of the video with Waters and his impression that it was difficult to tell who was in the video. Waters denied involvement and Warren explained to him "so they are charging you based off of looks like some Facebook posts that the co-defendant made, and the link was there."[40] Warren stated he discussed the "problems" with the State's case with Waters and the fact the Cline had pled guilty and had agreed to testify truthfully at trial, if called as a witness.[41] Mr. Warren never saw the Facebook photos prior to the handing the case off to Mr. Buckworth.  Mr. Warren also did not recall the video showing the robber holding a unique very long barreled gun.[42]

Mr. Buckworth testified that he took Waters' defense over from Mr. Warren in August 2017. He stated that he had prepared a summary of the evidence which he gave to Waters prior to trial.[43]  He did not believe he was able to show Waters the video due to the same concerns Mr. Warren mentioned concerning the prison's regulation in place at the time.[44] Mr. Buckworth stated he specifically recalled discussing contents of the video with Waters including the fact that the robber was wearing a bandana that was "very similar to the one noted in the Facebook picture where he is depicted with Mr. Cline. And I did discuss that with

---

[38] Tr. at 17, 19.
[39] Tr. at 23.
[40] Tr. at 24.
[41] Tr. at 25-27
[42] Tr. 35. I note  after viewing the video myself it is clear that the robber was holding a unique long barreled hand gun and was wearing a dark bandana with white markings on it and did not appear to be wearing a mask.
[43] Tr. 47-48
[44] Tr. 49-50

16

him."[45] He also noted that the bandana worn in the Facebook photos were the same as in the video.[46] Mr. Buckworth also discussed Cline's plea and agreement to testify with Waters and his hope that the State would not be able to locate Cline prior to trial.[47]

## DISCUSSION

Under Delaware law, the Court must first determine whether Waters has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[48]  Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[49]  Waters' motion was filed in a timely fashion; thus, the bar of Rule 61(i)(1) does not apply to the motion.  As this is Waters' initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

All but one of Waters' claims were not previously raised at trial or on direct appeal and they should be barred unless he demonstrates:  (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[50] The remaining claim, concerning the eyewitness identification was raised and rejected on direct appeal and is consequently barred by Superior Court Criminal Rule 61 (i)(4) as previously adjudicated. The bars to relief are inapplicable to a jurisdictional challenge or "to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision  (d) of Rule 61.[51]  To meet the

---

[45] Tr. 50
[46] Tr. 64
[47] Tr. 52
[48]  *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).
[49]  Super. Ct. Crim. R. 61(i)(1).
[50]  Super. Ct. Crim. R. 61(i)(3).
[51]  Super. Ct. Crim. R. 61(i)(5).

17

requirements of Rule 61(d)(2) a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted[52] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United State or Delaware Supreme courts, applies to the defendant's case rendering the conviction invalid.[53] Waters' motion pleads neither requirement of Rule 61(d)(2).

Each of Waters' grounds for relief including the claim raised on direct appeal, are premised on allegations of ineffective assistance of counsel. Therefore, Waters has alleged sufficient cause for not having asserted these grounds for relief at trial and on direct appeal. Waters' ineffective assistance of counsel claims are not subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Waters, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[54] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[55]

---

[52] Super. Ct. Crim. R. 61(d)(2)(i).
[53] Super. Ct. Crim. R. 61(d)(2)(ii).
[54] *State v. Gattis*, 1995 WL 790961 (Del. Super.).
[55] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two-part analysis enunciated in *Strickland v. Washington*[56] and adopted by the Delaware Supreme Court in *Albury v. State*.[57]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[58] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the proceedings would have been different, that is, actual prejudice.[59] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[60]

Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[61] However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[62] In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[63] Furthermore, Waters must rebut a "strong presumption" that trial counsel's

---

[56] 466 U.S. 668 (1984).
[57] 551 A.2d 53, 58 (Del. 1988).
[58] *Strickland*, 466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[59] *Id*.
[60] *See* e.g., *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).
[61] *Strickland*, 466 U.S. at 687.
[62] *Id.* at 697.
[63] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

representation fell within the "wide range of reasonable professional assistance," and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[64]

Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[65] In *Harrington v. Richter*,[66] the United States Supreme Court explained the high bar that must be surmounted in establishing an ineffective assistance of counsel claim. In *Harrington*, the United States Supreme Court explained that representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial.[67] The challenger's burden on an ineffective assistance of counsel claim is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial.[68]

Counsel's representation must be judged by the most deferential of standards. The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with his client, with opposing counsel, and with the judge. In light of this strong precedent, I have reviewed the file, considered Trial Counsel's and Water's affidavits, and the testimony of both Waters Counsel during the Rule 61, Evidentiary Hearing, the trial

---

[64] *Strickland,* 466 U.S. at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[65] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[66] *Harrington v. Richter*, 131 S. Ct. 770 (2011).

[67] *Id.*, at 791.

[68] *Id.*

and plea rejections colloquy transcripts, the exhibits presented at trial, and during the hearing, and the arguments of counsel and I conclude that Waters has failed to meet the heavy burden imposed by *Strickland*. Both Counsel state they discussed the evidence with Water. I find Counsels' testimony more compelling than Waters' allegations. Consequently, I find that Counsel represented Waters effectively.

Turning to each of Waters' claims of Ineffective Assitance of Counsel, overall Waters argues, that his Counsel was ineffectve throughout the entire case and consequently, the totality of the alleged ineffectiveness lead Waters to reject the plea offer made by the State to a 12-year Level V sentence. Waters then goes on to ennumerate the preceived failures of his Counsel that alleged lead him to reject the entirely reasonable plea offer from the State and also tainted the subsequent trial.

First, Waters alleges that his Counsel was ineffectve for failing to file a Motion to Supress the out of court and in court eyewitness identification. Waters claims counsel was ineffective for not filing a motion to suppress the identification and, in the event of its denial, re-raising the motion at trial.[69] He argues that an "unnecessarily suggestive out-of-court identification… tainted any in-court identification [the victim] could offer."[70] Waters' claim is without merit.

To prevail on a claim of ineffective assitance of counsel, a defendant must satistfy both prongs of *Strickland*.[71] Waters cannot credibly claim that counsel's performance was constitutionally deficient for failing to move to suppress the identification, given that the Supreme Court has substantively rejected the grounds Waters now asserts:

---

[69] Def. Am. Mot. at 31.
[70] *Id.*
[71] *See Archy c. State,* 2011 WL 4000994, at *5 (Del. Sep. 8, 2011) (stating, "[g]enerally, a claim for ineffective assistance of counsel fails unless *both* prongs of the *Strickland* test have been established.").

21

Here, the totality of the circumstances weighs strongly against any misidentifcation. While it is correct that Waters' image was the only one with a combination of long hair and a black shirt, other evidence supoorts the reliability of the identification. Amarjeet saw Waters' unmasked face, was "100%" certain of his idenitfication, and re-identified Waters in court. The identification also took place the day after the robberty, when the memory was still fresh in Amarjeet's mind.

Additionally, while police should take active steps to avoid potentially suggestive identificaitons, the evidence is lacking that the police intentionally manipulated the photo lineup. The black shirt was in Waters' DELJIS photo, the other photos were randomly assigned, and the hair choice of dreadlocks within the computer program did not allow for long or short hair. Thus, under the totality of the circumstances the photo array was in impermissibly suggestive, and the identification did not need to be exlcuded from the evidence at trial.[72]

Because Waters cannot show any error by his counsel in failing to seek suppression of eyewitness identifications, the Court need not address the prejudice prong of *Strickland*, and  Waters' claim of ineffective assistance of counsel as it relates to the identifications fails.

Waters next  claims that trial counsel was ineffective for failing to provide him with certain discovery in advance of his second trial in this matter.[73]  Waters claims that his trial counsel failed to provide him with police reports, Cline's plea agreement, and video surveillance.[74] Waters claims that prior to his first trial his counsel never told him that his co-defendent was going to testify against him at

---

[72] *Waters*, 2019 WL 2635742, at *2
[73] *Def. Am. Mot*. at 34-43.
[74] *Id.*at 40-41.

trial. He also alleges his counsel never told him that the State had a video of the crime which it intended to admit at trial. He also claims he never saw the Facebook photographs. Finally, he states in his affidavit that had he known about his co-defendant's plea, the video, and the Facebook photos, he would have accepted the State's plea agreement to 12-years incarceration prior to his initial trial. He alleges his counsel was ineffective for failing to bring all this information to his attention and thus causing him to reject the State's plea offer prior to his first trial. My finding of fact is that both of Waters' counsel discussed the surveillance video with him. Mr. Warren felt the video was too grainy to be of much use to the State and in his recollection the robber was wearing a mask. Furthermore, Mr. Warren did not recall if the video depicted the unique long barreled handgun which strongly resembled the gun found in his co-defendent's vehicle trunk. Mr. Buckworth recalled seeing the robber in the video wearing a bandana "very similar" to the one seen in the video and to the bandana Waters was wearing in the Facebook photo and discussing the information with Waters. Both Mr. Warren and Mr. Buckwoth recalled discussing Mr. Cline's plea and the possibility that he would testify at Waters' trial with him. Mr. Warren never saw the Facebook photographs but Mr. Buckworth did and recalled discussing them with Waters prior to the plea rejection colloquy. I have reviewed the video evidence along with the Facebook photos that were entered into evidence and I agree with Resident Judge Clark's assessment that the unique long barreled handgun can be seen in the video and that the robber depicted was a black male with dreadlocks wearing black clothing and a dark and white bandana on his head not covering his face. The video is however poor quality and Mr. Warren's characterization of it being grainy is accurate.

During the plea rejection colloquy, Waters stated that he "never received the discovery." At the Evidentiary Hearing, Mr. Buckworth testified that he was surprised by Waters assertion since he had discussed the case in full with

Waters. At the plea rejection colloquy, Mr. Buckworth stated, " The only, I guess, discovery which Mr. Waters is entitled to that he hasn't received were pictures. search warrants…" Following this hearing Waters did not make any further comments concerning his alleged lack of discovery. The Court then asked Waters if he wished to accept the plea offer or proceed to trial. Waters told the Court that he rejected the plea and the matter went to trial.

For the sake of argument, I will assume that neither counsel showed Waters the actual video due to the prison regulation against bringing a laptop and DVD players into prison. I will also assume Waters never saw the photographs of him and Cline that had been posted on Facebook the day before the robbery. However, I am confident that both counsel discussed the video with Waters and gave their assessments of its value to the State's case. I also find that both counsel told Waters that his co-defendant pled guilty and had agreed to testify truthfully if called as a witness at his trial. Furthermore I am satisfied that Mr. Buckworth fully discussed the Facebook photos and its similarities to the video with Waters prior to his rejection of the State's plea offer. Thus the question becomes was it ineffective assistance of counsel to have failed to have shown Waters the actual video and the photographs prior to the plea rejection. I can not conclude that either attorney was ineffective for failing to do so. Both counsel explained the evidence in the case to Waters and he was given the opportunity to accept the State's plea and he made the unfortunate, in retrospect, choice of freely, knowingly, and willingly to reject the offer. Additionally, given the grainy quality of the video, I cannot conclude that there is a reasonable probabilty that the original plea would have been accepted had Waters seen the video and the photographs as opposed to simply having them described to him. Waters made an unfortunate choice and sadly he must live with it. Perhaps, at sometime in the future he can petition for

clemancy or a pardon from the Govenor, but he has not established cause for relief. Therefore I recommend this ground for relief be denied.

Waters' final claim is that his trial counsel was ineffective for failing to request redactions of "(1) statements by the detective indicating his belief that [the defendant] was being untruthful during the interview, and (2) statements by both the [d]etective and the [the Defendant] relating to the [the Defendant's] criminal activity unrelated to the charge for which he was on trial."[75]

First, Waters has not carefully argued that all the statements he has pointed out were subject to redaction. In the case of references to selling drugs to his co-defendant, leaving at least one reason why the references to drug dealing were admissible under Delaware Rules of Evidence 404(b) and *Getz v. State*:[76] "[they] gave the jury a connection between Cline and the Defendant that Cline did not testify to and a reason Cline would have been an accomplice to [the Defendant]."[77] Put differently, under the rubric laid out in *Getz*:

(1) The connection between Cline and Waters was "material to an issue or ultimate fact in dispute in the case;"[78]

(2) Waters' admission to the connection between himself and Cline was "introduced for a purpose sanctioned by Rule 404(b);"[79]

---

[75] *Def. Am. Mot.* AT 44.

[76] *Getz v. State*, 538 A.2d 726, 734 (Del. 1988), *cited in Risper v. State*, 250 A.3d 76, 88 (Del. 2021); *see also Deshields v State*, 706 A.2d 502, 506-507 (Del. 1988) (enumerating additional factors when applying the Rule 403 balancing test to 404(b) evidence).

[77] *Def. Am. Mot*. At 48

[78] *Getz*, 538 A.2d at 734 ("The evidence of other crimes must be material to an issue of ultimate fact in dispute in the case.")

[79] *Id.* ("The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition").

(3) Because the evidence of the Defendant's drug-dealing connection with Cline came from his own admission it was "plain, clear[,] and conclusive;"[80]

(4) The defendant's connection to Cline was "not… too remote in time from the charged offense;"[81]

(5) The effect that flowed from the Defendant's admission was not *unfairly* prejudicial and was outweighed by its probative value.[82]

While Waters did not request, and the Court did not provide, a limiting instruction, the Delaware Supreme Court has held that counsel may decide not to request a limiting instruction for propensity evidence for tactical reasons, "to avoid emphasis." [83] Under the circumstances of this case, any attempt by trial counsel to seek redactions to Waters' statement to remove references to drug dealing would have been futile.

More importantly, trial counsel's closing argument makes clear that his decision not to request redactions was a strategic one. "[T]he strategic decisions made my counsel are entitled to a strong presumption of reasonableness." [84] And as our Supreme Court has recognized, even "evidence of '[i]solated poor strategy, inexperience, or bad tactics do[es] not necessarily amount to ineffective assistance."[85] Trial counsel here argued, forcefully, the Defendant's refusal to admit

---

[80] *Getz,* 538 A.2d at 734 (quoting *Renzi v. State,* 320 A.2d 711,712 (Del. 1974)) ("The other crimes must be proved by evidence which is 'plain, clear[,] and conclusive.'").

[81] *Id.* ("The other crimes must not be too remote in time from the charge offense.").

[82] *Id.* ("The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403."). Concededly, trial counsel did not request, and the Court did not issue, a limiting instruction; *see Getz,* 538 A.2d at 734; *Deshields*, 706 A.2d at 507; but that omission was a tactical one, as discussed *Infra. See Major v. State,* 1995 WL 236658, at *1-2 (Del. Apr. 20, 1995).

[83] *Major*, 1995 WL 236658, at *2.

[84] *Burns v. State,* 76 A.3d 780, 788 (Del.2013) (citing *Strickland v. Washington,* 466 U.S. 668, 690 (1984)).

[85] *Burns,* 76 A.3d at 788 (quoting *Archy v. State,* 2011 WL 400994, at *6 (Del. Sept. 8, 2011)).

to involvement in the crime *despite the detective's close questioning*, and his *willingness to admit other wrongdoings* to his own potential detriment, highlighted his consistency and credibility:

> [Trial Counsel]: Throughout this case, there have been inconsistencies. One of the things that has been consistent, however, that was consistent was Jamar Waters throughout his entire 20-minute interview where he was lied to by Detective Warren … He also told him that Jason Cline gave a full confession, which he didn't, and even after knowing "that information," Mr. Waters story never changed. He did submit to the officers that he sold dope occasionally, arguably causing trouble for himself in that regard, but what he didn't do was ever admit to the robbery. Why not? Because he wasn't there. Because he had nothing to do with the robbery that happened that occurred at the U.S. Gas Station.[86]

Trial counsel's argument shows that his decision not to object represented a reasonable tactical judgment that any prejudice in the manner of the detective's questioning of Waters, or Waters' admissions to drug dealing, was outweighed by its potential exculpatory value. That is why trial counsel seized upon it in his closing argument. Waters cannot establish that his trial counsel's strategy was unreasonable.

And as with his second claim, "establishing prejudice requires more than a showing of a theoretical possibility that the outcome was affected."[87] Waters' claim of prejudice strains credulity. The jury saw the robbery happen on surveillance video. They heard eyewitness testimony and the victim's identification of Waters. They saw a photo of Waters in the same clothing he wore in the surveillance video. The evidence of Waters' guilt, even apart from his statement, was overwhelming. Because Waters is required to satisfy both prongs of *Strickland*, the Court may also

---

[86] A579:22-A580:15.

[87] *Johnson*, 2014 WL 595436, at *2 (quoting *Frey*, 974 F.2d at 358) (internal quotes omitted).

resolve this claim without deciding the reasonableness of trial counsel's action. And because Waters cannot establish *Strickland* prejudice, his claim fails.

Because Waters has failed to demonstrate any unprofessional errors by his trial counsel, I need not reach his argument regarding cumulative error.

## CONCLUSION

After reviewing the entire record in this case, it is clear that Waters has failed to demonstrate that his Counsel were ineffective. Consequently, I recommend that Waters' Motion be denied, as meritless.

/s/Andrea M. Freud
Commissioner

AMF/jan
oc:    Prothonotary
cc:    Resident Judge Jeffrey J Clark
       Kevin B. Smith, DAG
       Natalie Woloshin, Esq.
       Jamar L. Waters, JTVCC